**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Thomas GALIFFA, Defendant-Appellant.**

No. 83–2001.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 8, 1983.

Decided May 11, 1984.

Michael P. Carey, Chicago, Ill., for defendant-appellant.

Andrea L. Davis, Dan K. Webb, U.S. Attys., Chicago, Ill., for plaintiff-appellee.

Before PELL, POSNER and COFFEY, Circuit Judges.

COFFEY, Circuit Judge.

On July 6, 1982, the grand jury for the Northern District of Illinois returned a four-count indictment charging the defendant-appellant, Thomas Galiffa ("Galiffa"), and seven other persons with crimes arising out of their alleged participation in a marijuana distribution ring. Count I charged Galiffa with conspiracy to both distribute and possess with intent to distribute marijuana in violation of 21 U.S.C. § 841(a)(1) and (2) and § 846.[1] Galiffa was not named in Counts II and III. Count IV

---

1. 21 U.S.C. § 846 states:

"Any person who attempts or conspires to commit any offense defined in this title is punishable by imprisonment or fine or both which may not exceed the maximum punishment proscribed for the offense, the commission of which was the object of the attempt or conspiracy."

Additionally, 21 U.S.C. § 841(a) provides:

"Except as authorized by this title, it shall be unlawful for any person knowingly or intentionally—

(1) to manufacture, distribute or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance; or

(2) to create, distribute, or dispense, or possess with intent to distribute or dispense, a counterfeit substance."

charged him (Galiffa) with the substantive offense of possession of marijuana with intent to distribute.[2]

On April 12, 1983, a jury found Galiffa guilty on Counts I and IV of the indictment. He was sentenced to five years' imprisonment. Execution of the sentence was suspended and Galiffa was placed on probation for five years on the Count I conspiracy conviction. A three-year special mandatory parole, to follow the probationary period, was imposed for Galiffa's Count IV possession conviction. Galiffa appeals his conviction arguing that the district court committed reversible error in its instructions to the jury.[3]

## I. FACTS

In late 1977 or early 1978, Leroy Schubert ("Schubert"), Stuart Ashenfelter ("Ashenfelter"), Jim Keefe ("Keefe"), and Allen Rechterman ("Rechterman") agreed to engage in the purchase, sale and distribution of marijuana. The venture continued until April 9, 1982, when Schubert, Ashenfelter, and seven others, including appellant Galiffa, were arrested by federal agents.

The criminal conspiracy consisted of a group of approximately 20 individuals who were associated in this enterprise for a period of some five years. Schubert and Ashenfelter, as principals, employed various persons as couriers, distributors, bookkeepers, drivers and warehousers. In 1980, Galiffa began living with Schubert, Schubert's girlfriend, and Rechterman. The group at this time was engaged in procuring and distributing marijuana. In November of 1981, Galiffa moved in with Ashenfelter, Rechterman, and Kathryn Rodger ("Rodger") who were all living in a house in Ingleside, Illinois. During that period, Ashenfelter took control of the organization, and the house became the center of the operations. Marijuana was stored, sales were made, and records of the sales were kept in the house. During this time, as Galiffa was unemployed, he was supported by proceeds from the organization with Ashenfelter's approval.

Galiffa's role in the organization was described as Ashenfelter's "go-for." Testimony at trial indicated that Galiffa acted as a driver-courier and sometimes wrote out receipts. Ashenfelter, however, testified that he could not recall ever seeing Galiffa make out a receipt. Testimony by Rechterman indicated that while Galiffa drove to Florida with him to pick up the marijuana, Galiffa did not load it or drive back to Chicago with Rechterman. Hill, another person involved with the distribution ring, indicated that in 1981 Galiffa did load a shipment and make the return trip back to Chicago with Schubert from an Oklahoma pickup.

On April 9, 1982, after Ashenfelter and Galiffa rented a truck, Ashenfelter purchased some cardboard boxes and the two drove to a forest preserve. After assembling the empty cartons, Ashenfelter left Galiffa at the forest preserve and drove to a vault where he had stored some marijuana. He loaded the boxes with marijuana, picked up Galiffa at the forest preserve and the two returned to the house. As Galiffa, Ashenfelter and Schubert began to

---

**2.** 21 U.S.C. § 841(a).

**3.** After properly instructing the jury on conspiracy, the district court gave the following allegedly erroneous instructions in conjunction with the conspiracy instruction:

"Any person who knowingly aids, abets, counsels, commands, induces or procures the commission of a crime is guilty of that crime. However, that person must knowingly associate himself with a criminal venture, participate in it, and try to make it succeed.

\* \* \* \* \* \*

"If you find that the defendant Galiffa is guilty of the conspiracy as charged in Count I, you may also find that defendant guilty of the offense charged in Count IV, provided that you find that the essential elements of Count IV as defined in these instructions have been established beyond a reasonable doubt, and provided that you also find beyond a reasonable doubt that the possession of the 234 pounds of marijuana with intent to distribute was committed pursuant to the conspiracy and that the defendant was a member of the conspiracy at the time the substantive offense was committed. The reason for this is that a co-conspirator committing an offense pursuant to a conspiracy is the agent of the other conspirators."

unload the truck, they were approached by law enforcement officers who had been keeping the house under surveillance. Galiffa and the others fled from the garage to the adjacent basement of the tri-level house where they were apprehended by the officers. Several bags of marijuana and an electronic scale were also seized in the basement. After Galiffa and the others were placed under arrest, a search of the house was conducted pursuant to a search warrant. Among the items seized were 234 pounds of marijuana, a large quantity of cocaine, an electronic scale, $10,440 in cash, narcotics paraphernalia and records of numerous drug transactions. Upon inspection it was ascertained that the bags of marijuana did not yield fingerprints traceable to Galiffa. At trial, four defendants testified that Galiffa was actively involved in the distribution ring.

Galiffa raises the following issues on appeal:

I. Whether the district court erred in instructing the jury on aiding and abetting a conspiracy?

II. Whether the district court erred in instructing the jury on liability of co-conspirators?

III. Whether the evidence was sufficient to sustain the defendant's conviction on Count IV for possession of marijuana with intent to distribute?

## II. INSTRUCTION ON AIDING AND ABETTING [4]

With regard to the aiding and abetting jury instruction, Galiffa raises several sub-

issues: (1) whether a person can be convicted of aiding and abetting a conspiracy; and (2) whether a fatal variance from the original indictment was created where Galiffa, although not originally charged in the indictment with aiding and abetting, may have been adjudged guilty of conspiracy as a result of the aiding and abetting instruction given to the jury.

■ Citing *People v. Strauch*, 240 Ill. 60, 88 N.E. 155 (1909), Galiffa contends that since the agreement is the essence of a conspiracy one can only aid and abet a conspiracy by facilitating the creation of the agreement to commit the substantive crime.[5] Galiffa contends that since there is no evidence demonstrating that he actually brought the parties together, he cannot be convicted of aiding and abetting the conspiracy. We believe this interpretation of the conspiracy statute is too restrictive. Although the petitioner is correct in stating that one can aid and abet a conspiracy by bringing the parties together to enter into the illicit agreement, a person can also be convicted of aiding and abetting a conspiracy for deeds other than acting as a liaison for the parties to the agreement.

In his treatise on criminal law, Professor LaFave enunciates his belief that the Supreme Court, although it has not explicitly ruled on this issue, would decide that a person can be guilty of aiding and abetting a conspiracy when the person commits an act designed to further the conspiracy.[6] The key, of course, is that the person must

---

**4.** Galiffa does not contend that the evidence was insufficient to support his conviction for conspiracy to possess with intent to distribute. Since the jury was asked under the general verdict formulation whether Galiffa was guilty of conspiring to possess with intent to deliver and was instructed not only as to the elements of conspiracy but also the elements of aiding and abetting a conspiracy, we must address whether the aiding and abetting instruction was proper and, if so, whether there was sufficient evidence to support conviction under this theory.

**5.** In *People v. Strauch,* the father introduced his son to another with the intent that they enter

into a conspiracy, which they subsequently did. The court held that "[i]f any two of the defendants charged entered into such conspiracy, and a third aided, assisted and encouraged the making of such an unlawful agreement, such third party would be equally guilty with those who actively participated in the unlawful agreement." *Strauch,* 240 Ill. at 73, 88 N.E. at 159. For a similar view that one can only aid and abet a conspiracy by facilitating the agreement, *see* Comment, *Developments in the Law—Criminal Conspiracy,* 72 Harv.L.Rev. 920, 934 (1959).

**6.** Professor LaFave, quoting a Supreme Court decision interpreting the leading conspiracy case of *United States v. Falcone,* 311 U.S. 205, 61

know of the conspiracy's existence at the time of his act. Without the crime of aiding and abetting a conspiracy, an unintended loophole would exist in the criminal justice system where an act is performed with full knowledge that it will further the ends of the illegal conspiracy.[7]

We are not alone in expressing the view that one may aid and abet a conspiracy. *United States v. Walker*, 621 F.2d 163 (5th Cir.1980) involved a situation similar to the present case. The defendant in *Walker* was charged with conspiracy to import marijuana in violation of 21 U.S.C. §§ 952(a) and 963 and conspiracy to possess marijuana with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1) and 846. On appeal, the defendant, like Galiffa, challenged a jury instruction on aiding and abetting the conspiracy. In rejecting the defendant's claim, the Fifth Circuit stated:

"18 U.S.C. § 2 does not define a crime. It simply makes punishable as a principal one who aids or abets the commission of a substantive crime."

*Id.* at 165 (citations omitted). This circuit has also stated that the violation of the aiding and abetting statute, 18 U.S.C. § 2, does not constitute a separate offense (*United States v. Gonzalez*, 582 F.2d 1162, 1165 (7th Cir.1978)), but rather, the aider is punishable as a principal. *United States v. Holleman*, 575 F.2d 139, 144 (7th Cir.1978). The *Walker* court went on to state:

"[a]ppellant seeks to distinguish these cases, urging that he was charged not as a principal, but as a conspirator in a conspiracy, a distinct 'inchoate' offense similar to, but different from aiding and abetting. However, if we accept the Eighth Circuit's ruling in *United States v. Rector*, 538 F.2d 223, 225 (8th Cir. 1976), *cert. denied*, 441 U.S. 963, 99 S.Ct. 2410, 60 L.Ed.2d 1068 (1979), that 18 U.S.C. § 2 is applicable to the entire criminal code, it would be applicable to conspiracy."

*Walker*, 621 F.2d at 166. We agree with the *Walker* court that if one can aid and abet a robbery, one can also aid and abet a conspiracy, which is a separate chargeable offense in and of itself.

The Ninth Circuit is also in accord with this view. In *United States v. Lane*, 514 F.2d 22 (9th Cir.1975), the defendant, while not assisting in the formation of the original agreement, was found guilty of aiding and abetting a conspiracy to distribute narcotics. In *Lane*, a defendant owned a shortwave radio over which he monitored police calls. After hearing that a pending drug deal was actually a setup, the defendant called the three persons who intended to make the deal in order to inform them that the parties to whom they were about to sell drugs were undercover policemen. The defendant was found guilty of aiding and abetting the conspiracy to sell narcot-

S.Ct. 204, 85 L.Ed. 128 (1940), notes that "the *Falcone* decision 'comes down merely to this, that one does not become a party to a conspiracy by aiding and abetting it, through sales of supplies or otherwise, *unless* he knows of the conspiracy; and the inference of such an analysis cannot be drawn merely from knowledge the bar will use the goods illegally.' *Direct Sales Co. v. United States*, 319 U.S. 703, 709, 63 S.Ct. 1265, 1268, 87 L.Ed. 1674, 1680 (1943)." W. LaFave & A. Scott, *Criminal Law* § 61, at 462–63 (1972). For a similar view that one should be guilty of aiding and abetting a conspiracy, assuming that the party knew a conspiracy existed and intended by his actions to aid the conspiracy, *see* Comment, *Complicity in a Conspiracy as an Approach to Conspiratorial Liability*, 16 U.C.L.A.L. Rev. 155, 162 (1968).

7. As an example of why one should be liable for aiding and abetting a conspiracy where the per-

son may not have been a party to the original agreement, consider the following. If a plan was organized to sell narcotics, and an act was taken with knowledge that the act would further the object of the conspiracy, however, the substantive crime which was the object of the conspiracy was not achieved nor was an attempt ever made, one could say that the crime to conspire to deliver narcotics was committed and that a person, with knowledge of the conspiracy although not a participant to the agreement, who attempted to aid and abet the furtherance of that conspiracy should be criminally liable. Without this charge, the person could not be held criminally liable "although his conduct and evil intent are the same regardless of whether the object is achieved or even attempted." *See* Comment, *supra*, note 6, at 167.

ics at trial and the conviction was affirmed on appeal.

■ Finally, a Fifth Circuit decision also recognizes that as an alternate theory of criminal liability one can aid and abet a conspiracy without necessarily participating in the original agreement. *See United States v. Alvarez*, 610 F.2d 1250, 1257 (1980), *rev'd on other grounds, United States v. Alvarez*, 625 F.2d 1196 (5th Cir. 1980) (*en banc*). Therefore, assuming that knowledge of the conspiracy is established, these cases demonstrate that one can aid and abet a conspiracy at any stage and not merely at the time of the agreement.

■ Under this approach, there is more than sufficient evidence to prove that Galiffa knew of the conspiracy. For over two years he resided in a house that was used as a drug distribution center. He was present when drug transactions were made and he accompanied other members of the conspiracy on drug courier trips. He was in the rented truck carrying the marijuana from the warehouse to the residence in Ingleside, Illinois and was arrested with the other defendants as they attempted to unload the truck. It is eminently clear that Galiffa did in fact have knowledge of the conspiracy.

■ Having determined that one can aid and abet a conspiracy and that Galiffa did have knowledge of the conspiracy, it must be determined whether Galiffa did in fact aid and abet the conspiracy. In order to aid and abet the evidence must demonstrate that the defendant "was associated with a criminal venture, participated in it as something he wished to bring about, and sought by his actions to make it succeed." *United States v. Peoni*, 100 F.2d 401, 402 (2d Cir.1938); *United States v. Trapnell*, 638 F.2d 1016, 1020 (7th Cir.1980). In the present case, the evidence demonstrates that Galiffa not only drove on trips to pick up marijuana from suppliers but he also performed other errands such as weighing and marking bales of marijuana, issuing receipts and delivering marijuana to customers from the basement of the house.

Finally, on the day of his arrest, Galiffa traveled to a forest preserve with Ashenfelter, assembled boxes which were later filled with marijuana by Ashenfelter at another location, traveled back to the house from the preserve in the loaded truck, and attempted to unload the marijuana just prior to his arrest. We hold that the evidence, when viewed in its entirety and in the light most favorable to the government, sufficiently establishes that Galiffa did in fact aid and abet the conspiracy.

■ Even though one can be guilty of aiding and abetting the conspiracy, and the evidence in this case demonstrates that Galiffa did aid and abet, we must next determine whether the district court nevertheless erred by instructing the jury on the question of aiding and abetting. The district court can commit reversible error when it strays from the original indictment by either allowing an amendment to the indictment at trial or permitting a variance in the proof presented. A judicial amendment of the indictment, whether implicit or explicit, is *per se* reversible error, *Stirone v. United States*, 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960), while a variance in proof from the original indictment justifies reversal only when the defendant has been prejudiced. *United States v. Salinas*, 654 F.2d 319, 323 (5th Cir.1981); *United States v. Bursten*, 453 F.2d 605 (5th Cir. 1971); *Gaither v. United States*, 413 F.2d 1061 (D.C.Cir.1969).

"This difference in treatment is attributable to the difference in the rights of the defendant that are affected. Where the indictment is amended, 'the defendant's substantial right to be tried only on charges presented in an indictment returned by a grand jury' ... is violated. In contrast where the evidence proves facts different from those alleged in the indictment—resulting in a variance—the defendant may be deprived of notice of the details of the charge against him."

*Salinas*, 654 F.2d at 323–24. While Galiffa's position is not completely clear, he appears to allege that the jury instruction on aiding and abetting erroneously amend-

ed the indictment or, in the alternative, surprised him to his prejudice.

■ With regard to the fatal amendment challenge, we hold that the district court's instruction on aiding and abetting did not constitute reversible error. This court has previously held that the aiding and abetting charge under 18 U.S.C. § 2(a) "need not be specifically pleaded and a defendant indicted for a substantive offense can be convicted as an aider and abettor" upon a proper demonstration of proof so long as no unfair surprise results. *United States v. Tucker*, 552 F.2d 202, 204 (7th Cir.1977). "If the trial court determines that the evidence warrants an aiding and abetting instruction, it is immaterial, although preferable, whether 18 U.S.C. § 2 is actually charged in the indictment. An aider is punishable as a principal." *United States v. Holleman*, 575 F.2d 139, 144 (7th Cir.1978). This is the rule in other circuits as well. *See, e.g., Levine v. United States*, 430 F.2d 641, 643 (7th Cir.1970) (listing cases from the Fourth, Fifth, Ninth, and Tenth Circuits supporting this rule). *See also United States v. Smith*, 727 F.2d 214 (2d Cir. 1984). For example, in *United States v. Walker*, 621 F.2d 163 (5th Cir.1980), the defendant was indicted for conspiracy but was later found guilty of aiding and abetting the conspiracy. The court stated:

> "The [district] court did not err in giving an instruction on aiding and abetting even though the defendant was not specifically indicted on that count. As we noted in *United States v. Bullock*, 451 F.2d 884, 888 (5th Cir.1971), 18 U.S.C. § 2 is an alternative charge in every count, whether explicit or implicit, 'and the rule is well-established, both in this circuit and others, that one who has been indicted as a principal may be convicted on evidence showing that he merely aided and abetted the commission of the offense.' "

*Id.* at 166 (footnote omitted). The reason for this rule is that 18 U.S.C. § 2 does not create a separate offense. It simply makes those who aided and abetted a crime punishable as principals. *United States v.*

*Gonzalez*, 582 F.2d 1162, 1165 (7th Cir. 1978); *United States v. Walker*, 621 F.2d 163, 166 (5th Cir.1980). We therefore hold that there was no fatal amendment to the indictment where the defendant may have been convicted as a principal in the conspiracy by aiding and abetting the conspiracy even though he was not charged with aiding and abetting in the original indictment.

■ A variance occurs when the terms of the indictment are unaltered, but the evidence offered at trial proves facts materially different from those alleged in the indictment. *Gaither v. United States*, 413 F.2d 1061, 1071 (D.C.Cir.1969). Even assuming a variance did in the present case exist, no prejudice resulted from it. Because aiding and abetting does not constitute a separate crime, all indictments are to be read as if the "alternative provided by the aiding and abetting statute, 18 U.S.C. § 2 is included therein." *United States v. Peterson*, 524 F.2d 167, 174 (4th Cir.1975). *See also United States v. Walker*, 621 F.2d 163, 166 (5th Cir.1980).

In *Russell v. United States*, 369 U.S. 749, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962), the court delineated the criteria by which an indictment is to be measured:

> "These criteria are, first, whether the indictment 'contains the elements of the offense intended to be charged, "and sufficiently apprises the defendant of what he must be prepared to meet," ' and, secondly, ' "in case any other proceedings are taken against him for a similar offense, whether the record shows with accuracy to what extent he may plead a former acquittal or conviction." *Cochran and Sayre v. United States*, 157 U.S. 286, 290 [15 S.Ct. 628, 630, 39 L.Ed. 704 (1895) ]; *Rosen v. United States*, 161 U.S. 29, 34 [16 S.Ct. 434, 435, 40 L.Ed. 606 (1896) ].' "

*Id.* 369 U.S. at 763–64, 82 S.Ct. at 1046–47. The latter criteria is not at issue in this case. As to the former, the present indictment sufficiently informed Galiffa of the offense with which he was charged and later convicted. The indictment under

Count I charging conspiracy stated, in pertinent part, that:

"STUART ASHENFELTER,

LEROY SCHUBERT,

TOM GALIFFA,

RICHARD KASVIN, also known as

Mr. Smith, SUSAN SCHWIND,

KATHRYN RODGER,

RICHARD GIOSH, and

RONALD VALUZZI,

defendants herein, wilfully and knowingly did combine, conspire, confederate and agree together, ... (a) to knowingly and intentionally distribute marijuana, ... and (b) to knowingly and intentionally possess with intent to distribute marijuana ....

"2. It was part of the conspiracy that the aforementioned individuals would and did possess with intent to distribute, distribute and cause to be distributed quantities of marijuana.

\* \* \* \* \* \*

"4. It was further part of the conspiracy that individuals were employed to act in varying capacities including drivers of loads of marijuana, couriers of cash payments for marijuana, packagers, warehousers, record keepers, and dealers of marijuana, in order to distribute and cause to be distributed quantities of marijuana."

Evidence was presented regarding the assistance Galiffa provided to the drug distribution ring and formed the basis for the aiding and abetting instruction. This evidence was consistent with the allegations contained in the indictment. There was no variance in proof that prejudiced the defendant in preparing his case for trial. Galiffa does not make this contention, rather, he argues that the indictment did not give sufficient notice of the crime charged

in the jury instruction in order to enable him to properly prepare a defense. However, as we previously held in this opinion, aiding and abetting need not be specifically charged in the indictment. There was sufficient notice from the language of the indictment as to the proof which would be presented at trial. This proof was presented and it formed the basis for the aiding and abetting instruction. The defendant was adequately informed of the offense charged. Therefore, the instruction should not have taken him by surprise and thus we hold he had ample opportunity to prepare a defense.

## III. INSTRUCTION ON CO–CONSPIRATOR LIABILITY

 Galiffa next contends that the following jury instruction given by the district court was prejudicial.

"If you find that the defendant Galiffa is guilty of conspiracy as charged in Count I, you may also find that defendant guilty of the offense charged in Count IV, provided that you find that the essential elements of Count IV as defined in these instructions have been established beyond a reasonable doubt, and provided that you also find beyond a reasonable doubt that the possession of the 234 pounds of marijuana with intent to distribute was committed pursuant to the conspiracy and that the defendant was a member of the conspiracy at the time the substantive offense was committed. The reason for this is that a co-conspirator committing an offense pursuant to a conspiracy is the agent of the other conspirators."

This instruction comports with the law in this and other jurisdictions following the *Pinkerton* theory of co-conspirator liability, *Pinkerton v. United States*, 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1940),[8] wherein each person who is involved in a continuing conspiracy which contemplates and encompasses an illegal act is respon-

**8.** See, e.g., *United States v. Fusaro,* 708 F.2d 17, 21 (1st Cir.1983); *United States v. Harris,* 713 F.2d 623, 626 (11th Cir.1983); *United States v. Pugliese,* 712 F.2d 1574, 1583 (2nd Cir.1983); *United States v. Sheeran,* 699 F.2d 112, 118 (3rd Cir.1983); *United States v. Poitier,* 623 F.2d 1017, 1023 (5th Cir.1980); *United States v. Sutton,* 642 F.2d 1001, 1018 (6th Cir.1980).

sible for the acts of his co-conspirators. *United States v. Shelton,* 669 F.2d 446, 454 (7th Cir.1982), *cert. denied,* 456 U.S. 934, 102 S.Ct. 1989, 72 L.Ed.2d 454 (1982); *United States v. Read,* 658 F.2d 1225, 1230 (7th Cir.1981).

From what we can discern, Galiffa's brief apparently raises two objections to this instruction. First, he contends that the instruction unfairly added Count IV as if it were an overt act that proved the existence of the conspiracy. We do not draw this conclusion from our reading of the instruction. Rather than the possession charge being used to establish the conspiracy, the instruction provided that if a conspiracy is found and one of his co-conspirators was shown to have possessed marijuana with intent to distribute then Galiffa could be convicted of the substantive criminal act of possession of marijuana with intent to distribute. As pointed out above, this instruction comports with the *Pinkerton* doctrine.

While not citing any cases to support his position, Galiffa next objects to the jury instruction claiming that it amended the indictment and, therefore, departed from the original indictment and the proof presented at trial. Regarding the proof presented at trial, we fail to ascertain any departure. Evidence was received at trial that Ashenfelter, one of Galiffa's admitted co-conspirators, possessed the marijuana with intent to distribute.[9] This obviously is enough evidence to establish grounds for the *Pinkerton* instruction since Ashenfelter, as a co-conspirator, had taken all of the requisite steps to be charged and convicted of possession with intent to distribute.

The jury instruction also did not constitute an amendment of the indictment. In the instant case, there obviously was no literal amendment of the indictment since Galiffa was charged with and convicted of possession with intent to distribute under 21 U.S.C. § 841(a). There was also no con-

structive amendment of the indictment. The leading case of *Stirone v. United States,* 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960) is not dispositive. In that case, the defendant was indicted for a Hobbs Act violation, but at trial, over the objection of the defendant, evidence was introduced proving a second violation of the Act. The Supreme Court stated that this action "destroyed the defendant's substantial right to be tried only on the charges presented in the indictment returned by the grand jury." *Id.* at 217, 80 S.Ct. at 273.

Constructive amendments have been found where there is a "complex of facts distinctly different from those set forth in the charging instrument and not ... where there is a single set of facts," *United States v. Von Stoll,* No. 726 F.2d 584 at 586 (9th Cir.1984) (quoting C. Wright, Federal Practice and Procedure, Criminal, § 516 at 27 (1982)), or where "the crime charged was substantially altered at trial, so that it was impossible to know whether the grand jury would have indicted for the crime actually proved." *Id.* In this case there was no complex set of facts different from the indictment proved at trial, nor was the crime altered at trial so that it was impossible to know whether the grand jury would have indicted for the crime charged. Pursuant to Rule 7(c)(1) of the Federal Rules of Criminal Procedure, the indictment recited the counts in plain and concise language alleging both the conspiracy and the substantive crime of intent to distribute along with respective statutory provisions. *See United States v. Roman,* 728 F.2d 846 (7th Cir.1984) (citing Fed.R.Crim.P. 7(c)(1)). Galiffa was convicted of these exact crimes. No cases have been cited to us, nor have we discovered any cases, that hold that an indictment must contain the specific theory of law which the prosecution intends to use in its attempt to convict the defendant.[10] For these reasons we

---

9. On direct examination, Ashenfelter testified that he "took control" of the organization which used the Ingleside house as the distribution outlet for the marijuana.

10. See *United States v. Roselli,* 432 F.2d 879, 894–95 (9th Cir.1970), where the defendant was indicted on aiding and abetting charges. There evidence was entered at trial to prove aiding

hold that the *Pinkerton* co-conspirator instruction was not an amendment of the indictment.

■■■ Turning to the question of variance, our court has recently stated:

" '[A] variance will not be deemed fatal where the defendant is so informed of the charges against him that he is protected against a second prosecution for the same offense and is able adequately to prepare his defense against the charges set forth in the indictment.' "

*United States v. Lisinski*, 728 F.2d 887 at 893 (7th Cir.1984) (quoting *United States v. Warden*, 545 F.2d 32, 35 (7th Cir.1976)). Clearly the jury instruction regarding the *Pinkerton* theory did not constitute a prejudicial variance from the indictment. The substantive count in many instances is based upon the allegation of the underlying conspiracy charge. *See United States v. Boyle*, 338 F.Supp. 1028 (D.D.C.1972) (citing *Pinkerton v. United States*, 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946)). The fact that the *Pinkerton* theory was not specifically charged in Count IV does not mean that Galiffa was prejudiced because of such an omission. When one is charged with conspiracy, it is probable that he will also be charged with the substan-

tive offenses committed by a co-conspirator because one who is found to be a part of the conspiracy may be liable for the substantive crimes committed by his co-conspirators springing from the conspiracy. *Pinkerton v. United States*, 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946). We cannot see how Galiffa's counsel was prejudiced in his preparation of Galiffa's defense simply because the *Pinkerton* rule was not expressly included in the language of the indictment.[11] Therefore, we hold that it was not improper for the district court to instruct the jury under the *Pinkerton* theory.

## IV.

■■■ The jury returned a general verdict finding Galiffa guilty of possession of marijuana with intent to distribute. In the previous section of this opinion we found that the jury could have convicted Galiffa under the *Pinkerton* theory. Since the jury could have instead found Galiffa directly guilty of the possession charge, we must next address the issue of whether there was sufficient evidence in the record to establish that Galiffa possessed marijuana with intent to distribute. Citing *United States v. MacPherson*, 664 F.2d 69, 74 (5th

---

and abetting, but in its instruction to the jury the trial court stated that the defendant could be convicted under the *Pinkerton* theory. In upholding this conviction the Ninth Circuit rejected the defendant's argument that the instruction under the *Pinkerton* theory broadened the indictment so as to deny him his Fifth Amendment right to be held to answer only to an indictment of a Grand Jury. The defendant also implicitly argued that because the *Pinkerton* instruction broadened the indictment, it was easier for the government to convict him of the substantive offense. The court responded: "A conspirator, however, may be convicted on the *Pinkerton* theory without a specific allegation that a coconspirator committed the offense in furtherance of the conspiracy." *Roselli*, 432 F.2d at 895. The court then explained:

"Hence, the only possible basis for objection by Teitelbaum is that the wording of the indictment somehow misled him to his prejudice. He appears to complain because the allegation that he aided and abetted the commission of the offenses caused him to come forward with a defense, and a successful one, specifically directed to that theory of liability,

but since he would have been exposed to liability on this theory in any event, the particularization did him no harm. *He does not suggest, even now, that he failed to present any evidence or argument that he might have presented had the indictment ... spelled out the* Pinkerton *theory of liability.*" *Id.* (footnote omitted, emphasis added). Similarly, Galiffa does not now suggest what evidence or arguments he would have presented had the *Pinkerton* theory been included in the indictment.

*See also United States v. Wilner*, 523 F.2d 68, 72–73 (2d Cir.1975), where the defendant was indicted on two counts, the first alleging conspiracy to distribute a controlled substance and the second alleging the substantive crime of possession with intent to distribute. The court upheld the conviction for the second count where the jury was instructed under the *Pinkerton* theory.

**11.** The *Pinkerton* method of establishing liability is analogous to the aiding and abetting method in that aiding and abetting under 18 U.S.C. section 2 need not be pled in the indictment.

Cir.1981), the defendant argues that his mere presence in the vehicle used to transport marijuana on the day of his arrest without proof that he had actual knowledge of the contents of the vehicle is insufficient to support the conviction for possession with intent to distribute. He further contends that his presence at the rear of the truck and his subsequent flight when the officers raided the Ingleside house is insufficient to establish possession. *See United States v. Lopez-Ortiz,* 492 F.2d 109, 115 (5th Cir.), *cert. denied,* 419 U.S. 1052, 95 S.Ct. 630, 42 L.Ed.2d 647 (1974). We would agree with Galiffa if this was all that the evidence demonstrated. However, the evidence presented at trial goes well beyond these assertions.

In *MacPherson* two defendants were arrested off the coast of Florida for possession of marijuana with intent to distribute. The Fifth Circuit reversed the conviction of one of the defendants because the only evidence in the record supporting his conviction was his presence on the boat at the time of his arrest. The record did not indicate when or where the defendant boarded the boat or the nature of his relationship to the other defendant whose conviction for possession with intent to distribute was affirmed. *MacPherson,* 664 F.2d at 74. Similarly, in *Lopez-Ortiz,* the conviction was overturned because the government did not demonstrate that the defendant had any connection with the site or the marijuana other than his flight from the scene.

█ In the instant case, however, it was demonstrated that Galiffa was personally acquainted with the other members of the drug distribution ring. In fact, he lived with leaders of the drug ring in the very house that was used as the distribution center. His role in this organization was described as a "go-for." There was testimony that Galiffa accompanied others on trips to pick up marijuana and that on one occasion he loaded a truck with marijuana and accompanied the driver back to Chicago from Oklahoma. The testimony presented also indicated that not only did he help sell, package and distribute marijuana at the house, but also at the time of his arrest a scale and money were found in the house and a large quantity of marijuana was found both in the house and the garage. Furthermore, a truck was rented in his name, he was a passenger in that truck used to transport marijuana and he fled from the rear of the truck when the officers rushed the house. Viewing this evidence in the light most favorable to the government, substantial evidence was presented to the jury for them to find that Galiffa did have knowledge that the vehicle contained marijuana and that he aided and assisted in its transfer. To establish constructive possession of a controlled substance, the government must produce evidence demonstrating "ownership, dominion, or control over the contraband itself or the premises or vehicle in which the contraband is concealed.... In other words, there must be some nexus between the accused and the prohibited substance." *United States v. Ferg,* 504 F.2d 914, 916–17 (5th Cir.1974) (citations omitted). Residence in a house used as a drug distribution center, and evidence of direct access to and participation in the marijuana distribution on the day of his arrest is enough to establish this nexus and, therefore, marijuana possession under 21 U.S.C. § 841(a). *See United States v. Davis,* 562 F.2d 681, 684–85 (D.C. Cir.1977); *United States v. Hutchinson,* 488 F.2d 484, 488–89 (8th Cir.1973).

There was more than sufficient evidence to establish that Galiffa had a relationship to the scene and the persons involved in the possession and distribution of marijuana. The jury was instructed that presence at the scene of the crime, by itself, does not establish the defendant's guilt. After being so instructed, they could have determined that Galiffa knowingly possessed the marijuana with intent to distribute. Viewing the evidence in this case in the light most favorable to the government, we hold that "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Moya,* 721 F.2d 606, 610 (7th Cir.1983).

Galiffa's judgment of conviction is affirmed.