UNITED STATES of America, Plaintiff–Appellee,

v.

Shawn W. TROOP and Kenneth A. Cooper, Defendants–Appellants.

Nos. 89–1811 & 89–1889.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 12, 1989.

Decided Dec. 5, 1989.

Stephen J. Liccione, Asst. U.S. Atty., Office of the U.S. Atty., Milwaukee, Wis., for U.S. in No. 89–1811.

Michael J. Backes, Milwaukee, Wis., for Shawn W. Troop.

Matthew L. Jacobs, Stephen A. Ingraham, Francis D. Schmitz, Asst. U.S. Attys., Office of the U.S. Atty., Milwaukee, Wis., for U.S. in No. 89–1889.

David E. Lowe, Hachey & Lowe, Milwaukee, Wis., for Kenneth A. Cooper.

Before CUMMINGS, WOOD, Jr., and COFFEY, Circuit Judges.

WOOD, Jr., Circuit Judge.

The defendants-appellants, Kenneth A. Cooper and Shawn W. Troop, were convicted by a jury on February 17, 1989, of conspiracy to possess with intent to distribute and distributing cocaine, 21 U.S.C. § 846 and 18 U.S.C. § 2; possession with intent to distribute approximately 480 grams of cocaine, 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2; and possession of a firearm while committing a drug-related offense, 18 U.S.C. § 924(c) and § 2.[1] On appeal, Troop argues that the evidence adduced at trial was insufficient to support a conviction on any of the three counts. Cooper argues that the trial court improperly admitted (1) evidence of his use of cocaine and other prior wrongs and (2) co-conspirator hearsay statements.[2] We affirm.

## I. FACTUAL BACKGROUND

Troop and Cooper were arrested on November 7, 1988, following the attempted sale of nearly half a kilo of cocaine to DEA undercover agents. Their arrests followed a series of incidents that began on October 27, 1988.

On that date, Milwaukee Police Department Officer Barry Debraska made an undercover purchase of one-half gram of cocaine. This sale occurred in Milwaukee at the 39th Street apartment of Timothy Pernell and Cooper. Officer Debraska identified Troop as the person who opened the barricaded door for him, reset the barricade after he entered, and watched the transaction at close range.

Several hours later, Officer James Williams of the Milwaukee Police Department arrested a person at that apartment who was carrying the prerecorded currency used in the earlier transaction with Officer Debraska. Troop was again present and misidentified himself as "Shawn T. Wiggins" when asked his name.

On November 2, 1988, Milwaukee police executed a search warrant at the 39th Street apartment where they found a small amount of cocaine, a scale, a shoulder holster, and an electronic paging device (a "beeper"). The officers arrested Troop after he told them that he was the occupant of the apartment. Cooper, Pernell, and an

---

1. Cooper received 70 months imprisonment on Counts I and II and 5 years imprisonment on Count III consecutive to the sentence on Counts I and II. Troop received 78 months imprisonment on Counts I and II and 5 years imprisonment on Count III consecutive to the sentence on Counts I and II. Neither defendant challenges his sentence.

2. Troop and Cooper initially planned to file a joint brief of the issues now raised by Cooper on his appeal. Prior to filing, however, Troop filed a motion to strike the joint brief as to him and the court granted his motion.

unindicted co-conspirator, Ronald Hutt, were also present but were not arrested. After the November 2d raid, the drug sales operations were moved to Hutt's apartment located on West Silver Spring Drive in Milwaukee.

Pernell and Cooper arranged the sale of the one-half kilo of cocaine involved in the November 7th arrests through what turned out to be a confidential informant (the "Informant").[3] The Informant then contacted DEA Special Agent Raymond Melick.

On November 7th, two unsuccessful attempts to make the one-half kilo sale were made. The DEA Special Agents were unable to make it to the first meet at 41st and Hampton in Milwaukee because of a prior commitment. A second meet was set up through the Informant at the Taco Bell at 61st Street and Silver Spring Drive but the sale was aborted when the parties could not agree where the sale should take place. A third sale location was arranged at the parking lot of the Bonanza Mall at 76th Street and Fond du Lac Avenue.

DEA Special Agents Raymond Melick and William Hehr were waiting in their car at the Bonanza Mall when the defendants arrived. When Agent Melick approached the car in which the defendants and the Informant were sitting, Pernell showed the cocaine to him. Agent Hehr began counting the $12,000 DEA "buy money" within view of Pernell, Cooper, and Troop. Pernell gave the Informant the cocaine, and the Informant got out of the car and headed toward Agent Melick. There were shouts from the back seat demanding that Agent Hehr turn over the money. At this point the police moved in and arrested the defendants.

After the police arrested the defendants, the DEA agents seized 374 grams of cocaine and a gun from Pernell as well as 146 grams of cocaine from the back seat of the car, a beeper[4] and .36 grams of cocaine from Troop and some drug paraphernalia from Cooper.

Defendants Troop and Cooper filed timely Notices of Appeal after the final judgments of conviction and sentence. We have jurisdiction under 28 U.S.C. § 1291.

## II. DISCUSSION

### A. *Defendant Troop*

As a threshold issue we note that Troop's trial counsel failed to file a motion for judgment of acquittal at the close of the government's case. Because of counsel's failure to challenge the sufficiency of the evidence against Troop on all three counts of the indictment, this court must review Troop's sufficiency of the evidence arguments under the plain error doctrine of Fed.R.Crim.P. 52(b).[5] *See United States v. Snyder*, 872 F.2d 1351, 1357 (7th Cir.1989); *United States v. Wynn*, 845 F.2d 1439, 1442–43 (7th Cir.1988). Before a reviewing court reverses a conviction based on an error that defense counsel did not raise at trial, the reviewing court must be convinced that reversal "is necessary in order to avert an actual miscarriage of justice, which implies the conviction of one who but for the error probably would have been acquitted." *United States v. Silverstein*, 732 F.2d 1338, 1349 (7th Cir.1984), *cert. denied*, 469 U.S. 1111, 105 S.Ct. 792, 83 L.Ed.2d 785 (1985). For an error to be plain it must "be an error that probably changed the outcome of the trial." *Id.*

Troop contends that the evidence adduced at trial was insufficient to support a conviction on any of the three counts in the indictment. The standard of review used to determine whether a jury verdict is supported by sufficient evidence is clearly es-

---

**3.** Because the government could not locate him, the Informant did not testify at trial. Defense counsel for Troop conceded that neither of the defense attorneys attempted to subpoena the Informant.

**4.** The parties stipulated at trial that a Ron O. Gordy signed the credit application for the beeper. Noting this fact at oral argument, defense counsel for Troop took issue with references to

"Troop's beeper" in the government's brief. The government responded that those engaged in drug operations often own beepers in names other than their own.

**5.** Fed.R.Crim.P. 52(b) provides: "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."

tablished. The reviewing court is to consider all the evidence in the light most favorable to the government and will affirm the defendant's conviction if the court finds that *"any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Grier,* 866 F.2d 908, 922 (7th Cir.1989) (quoting *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis in original)); *United States v. Hooks,* 848 F.2d 785, 788 (7th Cir.1988). Recognizing that Troop therefore bears a heavy burden in overturning the verdict on appeal, we consider Troop's arguments with respect to each of the charges in turn.

### 1. The Conspiracy Charge

To prove that Troop participated in a conspiracy to sell cocaine, the government must show (1) the alleged conspiracy existed and (2) Troop knowingly and intentionally became a member of the conspiracy. *United States v. Abayomi,* 820 F.2d 902, 905 (7th Cir.), *cert. denied,* 484 U.S. 866, 108 S.Ct. 189, 98 L.Ed.2d 142 (1987). Troop admits that a conspiracy existed (Def.'s Br. at 10), but denies that he was a member of this conspiracy. We therefore limit our discussion to whether the government showed that Troop was a participant in the conspiracy.

A defendant can be convicted of participation in a single conspiracy with other defendants if the government establishes that he "in some way participated in the [existing] conspiracy." *Abayomi,* 820 F.2d at 906 (quoting *United States v. Mancillas,* 580 F.2d 1301, 1307 (7th Cir.), *cert. denied,* 439 U.S. 958, 99 S.Ct. 361, 58 L.Ed.2d 351 (1978)). Although participation cannot be shown by mere knowledge or approval of, association with, or presence at a conspiracy, *Abayomi,* 820 F.2d at 906; *United States v. Dalzotto,* 603 F.2d 642, 645 (7th Cir.), *cert. denied,* 444 U.S. 994, 100 S.Ct. 530, 62 L.Ed.2d 425 (1979), once the existence of a conspiracy has been established, even if the connection between the defendant and the conspiracy is slight, evidence that establishes the defendant's participation beyond a reasonable doubt is sufficient to convict. *United*

*States v. Grier,* 866 F.2d 908, 924 (7th Cir.1989) (quoting *United States v. Xheka,* 704 F.2d 974, 988 (7th Cir.), *cert. denied,* 464 U.S. 993, 104 S.Ct. 486, 78 L.Ed.2d 682 (1983)); *United States v. Williams,* 798 F.2d 1024, 1027 (7th Cir.1986). Additionally, the use of circumstantial evidence is permissible and in fact " 'may be the sole support for a conviction.' " *Grier,* 866 F.2d at 923 (quoting *United States v. Nesbitt,* 852 F.2d 1502, 1511 (7th Cir.1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 808, 102 L.Ed.2d 798 (1989)).

Finally, we recognize that juries, in reaching their verdicts, are allowed and expected to draw upon their common sense in evaluating what is reasonable to infer from circumstantial evidence. *Id.; Nesbitt,* 852 F.2d at 1511. Because determinations as to credibility of witnesses are particularly within the province of the jury, a reviewing court, absent extraordinary circumstances, will defer to the jury's credibility findings. *Grier,* 866 F.2d at 923–24; *United States v. Vega,* 860 F.2d 779, 794 (7th Cir.1988).

Applying the standards of proof set forth above, it is clear that a jury exercising well-reasoned judgment could find that Troop was part of the conspiracy to distribute cocaine. The evidence presented at trial to connect Troop with the conspiracy included testimony showing that three times between October 27, 1988, and November 3, 1988, law enforcement personnel observed Troop at places where drug operations were being carried out. Specifically, Officer Debraska testified that Troop was at the 39th Street apartment on October 27, 1988, operating the barricades and observing Officer Debraska make his undercover purchase of cocaine. When Officer Williams made an arrest at the apartment later that day, Troop was there again and misidentified himself. Finally, Officer Debraska arrested Troop on November 2, 1988, at Hutt's apartment when the Milwaukee police executed a search warrant.

Testimony of Pernell also linked Troop to the conspiracy. Pernell was charged along with Troop and Cooper in the three count indictment. Prior to testifying at trial,

Pernell pleaded guilty to all three charges and agreed to cooperate with the government in return for having the firearm charge against him dropped. Pernell testified that Troop gave him permission to give out the number of the beeper that Troop carried to cocaine customers who would then call on the beeper to arrange to buy cocaine. Pernell also stated that Troop spent November 7th at Hutt's apartment with Cooper and himself. Troop was in the living room with Pernell and Cooper when the two told the informant that they would get the cocaine. Pernell testified that Troop was with Cooper and himself at the scenes of the first two attempts to consummate the November 7th sale. On the ride to the Taco Bell, the scene of the second attempted sale, Troop rode in the back seat of the car and the cocaine was in the back of the car against the rear window. Pernell testified further that, while at Taco Bell, Troop relayed a message to him from the Informant concerning when they could expect the prospective buyers to arrive.

In addition to Troop's presence at both apartments and at the locations of all three of the attempted sales, there was expert testimony that drug houses often use a division of labor and that one job is to work the barricades on the doors. Pernell also testified that Troop had worked the doors on previous occasions.

Troop attempts to paint a picture very different from that presented by the government. Troop contends that he had only a buyer-seller relationship with the conspirators in which he bought small amounts of cocaine for personal use. These purchases, he argues, explain his presence at the drug houses. He also argues that his lack of participation in either negotiations with the DEA agents or in drug-related conversations with the conspirators further shows he was not a member of the conspiracy. Troop claims that he accompanied the others to the various locations on November 7th because Barnes had promised him a ride home and contends that he did not know that nearly half a kilo of cocaine was in the car at any time.

Although it might be possible to view each part of the picture as Troop would have us do, we have previously observed that

> "it is also imperative that we not rend the fabric of evidence and examine each shred in isolation; rather, the reviewing court 'must use its experience with people and events in weighing the chances that the evidence correctly points to guilt against the possibility of [inaccurate] or ambiguous inference....'"

*United States v. Abayomi,* 820 F.2d 902, 906 (7th Cir.), *cert. denied,* 484 U.S. 866, 108 S.Ct. 189, 98 L.Ed.2d 142 (1987) (quoting *United States v. Redwine,* 715 F.2d 315, 319 (7th Cir.1983), *cert. denied,* 467 U.S. 1216, 104 S.Ct. 2661, 81 L.Ed.2d 367 (1984) (citation omitted)). We also recognize that

> [i]f the government proves its case by circumstantial evidence, "it need not exclude every reasonable hypothesis of innocence so long as the total evidence permits a conclusion of guilt beyond a reasonable doubt." ... The trier of fact is free to choose among various reasonable constructions of the evidence.

*United States v. Nesbitt,* 852 F.2d at 1511 (quoting *United States v. Radtke,* 799 F.2d 298, 302 (7th Cir.1986)).

After reviewing the evidence in a light most favorable to the government, we conclude that the jury rationally could have determined that Troop was more than only a personal drug user who wanted a ride home and got caught in a drug conspiracy as an innocent bystander. Rather, the jury could have found, and did find, that Troop was involved in a conspiracy to sell cocaine in violation of § 846 and § 2.

2. Possession and Possession With Intent to Distribute

To convict Troop of possession with intent to distribute and distribution of 480 grams of cocaine, the government had the burden of proving Troop (1) knowingly or intentionally possessed cocaine; (2) possessed cocaine with the intent to distribute it; and (3) knew the substance was a controlled substance. *See* 21 U.S.C. § 841(a)(1). At the close of the trial, the jury was instructed on the theory of con-

structive possession and on the *Pinkerton* doctrine.

Under the *Pinkerton* doctrine established in *Pinkerton v. United States,* 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946), a conspirator can be found guilty for a co-conspirator's crimes but the jury must be instructed on this theory of guilt. *See United States v. Manzella,* 791 F.2d 1263, 1267 (7th Cir.1986); *United States v. Wozniak,* 781 F.2d 95, 97 (7th Cir.1985). The doctrine is based on the idea that the conspirators are agents of each other and just as a principal is bound by the acts of his agents within the scope of the agency, so is a conspirator bound by the act of his co-conspirators.

Troop argues that the *Pinkerton* doctrine cannot provide a basis for his conviction because he was not a member of the conspiracy. We have already determined, however, that the evidence was sufficient to support Troop's conviction for conspiracy charged in Count I of the indictment. *See supra* Part I.A.1. Thus, the only question remaining is whether the trial judge adequately instructed the jury on the *Pinkerton* doctrine.

We conclude that the instruction given by the trial judge was adequate to instruct the jury on the *Pinkerton* doctrine. The record reveals that the trial judge instructed the jury as follows:

A conspirator is responsible for offenses committed by his fellow conspirators, if he was a member of the conspiracy when this offense was committed, and if the offense was committed in furtherance of or as a natural consequence of the conspiracy. Therefore, if you find a defendant guilty of the conspiracy charged in count one, and if you find beyond a reasonable doubt that while he was a member of the conspiracy, his fellow conspirators committed an offense alleged in another count of the indictment, in furtherance of or as a natural consequence of that conspiracy, then you should find him guilty of the offense charged in the other count.

We upheld a substantially similar *Pinkerton* instruction in *United States v. Galiffa,* 734 F.2d 306 (7th Cir.1984).[6] Although we note that the instruction might have been more complete, *see, e.g. United States v. Zabic,* 745 F.2d 464 (7th Cir.1984),[7] we find that the instruction given by the trial judge in this instance includes all the elements of the *Pinkerton* doctrine and presents the doctrine to the jury in an intelligible manner.[8] Given the sufficiency of the evidence to show Troop's participation in the conspiracy and the adequacy of the *Pinkerton*

---

**6.** In *Galiffa,* the trial judge instructed the jury: If you find that the defendant Galiffa is guilty of conspiracy as charged in Count I, you may also find that defendant guilty of the offense charged in Count IV, provided that you find that the essential elements of Count IV as defined in these instructions have been established beyond a reasonable doubt, and provided that you also find beyond a reasonable doubt that the possession of the 234 pounds of marijuana with the intent to distribute was committed pursuant to the conspiracy and that the defendant was a member of the conspiracy at the time the substantive offense was committed. The reason for this is that a co-conspirator committing an offense pursuant to a conspiracy is the agent of the other conspirators.

*Galiffa,* 734 F.2d at 313.

**7.** In *Zabic,* the trial judge instructed the jury: If you find that the defendant is guilty of conspiracy as charged in Count One, you may also find the defendant guilty of a substantive offense as charged in any other count of the indictment, provided that you find the essen-

tial elements of that count as defined in these instructions have been established beyond a reasonable doubt, and provided that you also find beyond a reasonable doubt,

First, that the offense defined in the substantive count was committed pursuant to the conspiracy, and

Second, that the defendant was a member of the conspiracy at the time the substantive offense was committed.

Under the conditions just defined a defendant may be found guilty of a substantive count even though he did not participate in the acts constituting the offense as defined in the substantive count. The reason for this is that a co-conspirator committing a substantive offense pursuant to a conspiracy is held to be the agent of the other co-conspirators.

*Zabic,* 745 F.2d at 474.

**8.** The trial judge's instruction substantially conforms to our pattern jury instruction for conspirator liability for substantive crimes committed by co-conspirators. III Federal Criminal Jury Instructions of the Seventh Circuit 6 (1986).

instruction given by the trial judge, we conclude that a well-reasoned jury could have found Troop guilty under the *Pinkerton* doctrine of possession and possession with intent to distribute cocaine in violation of § 841(a)(1) and § 2. Because we hold that Troop's conviction can be supported by this doctrine, we need not address the issue of constructive possession.

### 3. Possession of a Firearm

■ To convict Troop of using or carrying a firearm during and in relation to a drug trafficking offense, the government must show (1) Pernell was a willful member of the conspiracy alleged in Count I; (2) Pernell carried or used the firearm described in the indictment during and in relation to the conspiracy charged in Count I; (3) Pernell carried or used the firearm in furtherance of or as a natural, foreseeable consequence of the conspiracy; and (4) Troop was a member of the conspiracy at the time Pernell carried or used the firearm. *See* 18 U.S.C. § 924(c); *United States v. Gironda,* 758 F.2d 1201, 1213–14 (7th Cir.1985).

At trial Pernell testified he had his gun with him at the Taco Bell, and that during the second sale attempt and while waiting for the prospective buyers, he accidentally fired the gun through one of the car doors. Cooper then took the gun for safekeeping. Troop was inside the Taco Bell when the gun went off and was subsequently informed of the event by Cooper.

Troop only contests the sufficiency of the evidence as to the fourth element of the firearm charge. Troop argues that no reasonable jury could have found him guilty beyond a reasonable doubt of this crime because no rational trier of fact could have found that he was a member of the conspiracy. This is Troop's sole argument. We have already determined that the evidence was sufficient to support a conviction for conspiracy. *See supra* Part II.A.1. We therefore conclude that his claim that the evidence was insufficient to support a conviction for possession of a firearm during a

drug-related offense in violation § 924(c) and § 2 is without merit.

Because there is sufficient evidence to support Troop's convictions on all three counts of the indictment, we conclude no plain error occurred.

### B. *Defendant Cooper*

Cooper challenges his conviction on grounds that the trial judge improperly admitted evidence of prior bad acts as well as co-conspirator hearsay statements.[9]

### 1. Prior Bad Acts

Over Cooper's objections, the government was permitted to introduce evidence of his prior use of cocaine, of his prior sale of cocaine, and of his presence at the 39th Street apartment on November 2, 1988, when Milwaukee police officers executed the search warrant. Cooper argues that admission of this evidence violated Federal Rule of Evidence 404(b). Rule 404(b) provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or fraud.

Thus, although evidence of a defendant's prior bad acts may not be introduced under Rule 404(b) to prove his *propensity* to commit the crime charged, *United States v. Manganellis,* 864 F.2d 528, 531 (7th Cir. 1988); *Woodruff v. Lane,* 818 F.2d 1369, 1373 (7th Cir.1987), it may be admitted for other purposes.

■ This circuit uses a four-prong test to determine whether evidence of acts other than those charged are admissible. Evidence of prior bad acts may be admitted under Rule 404(b) only if (1) the evidence is directed toward establishing a matter in issue other than the defendant's propensity to commit the crime charged, *United States v. Shackleford,* 738 F.2d 776, 779

---

**9.** Because his attorney was excused from oral argument, Cooper's case is decided on the record and briefs.

(7th Cir.1984); (2) the evidence shows that the other act is similar enough and close enough in time to be relevant to the matter in issue, *id.;* (3) the evidence is sufficient to support a jury finding that the defendant committed the similar act, *Huddleston v. United States,* 485 U.S. 681, 108 S.Ct. 1496, 1499, 99 L.Ed.2d 771 (1988); and (4) the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice. *Shackleford,* 738 F.2d at 779.[10]

We also note that our review of the trial judge's determination of the admissibility of evidence under Rule 404(b) is governed by the abuse of discretion standard. *United States v. Connelly,* 874 F.2d 412, 415 (7th Cir.1989); *United States v. Zapata,* 871 F.2d 616, 620 (7th Cir.1989).

■ Cooper argues that Pernell's testimony fails to meet any of the four prongs of the *Shackleford* test because there was no showing that Cooper's use showed motive or intent to join a conspiracy; use of cocaine is not a similar activity to selling cocaine; there was no corroboration of Pernell's testimony; and evidence of his use is more prejudicial than probative. We disagree.

At trial, Pernell testified that Cooper had used cocaine over a course of several years. Pernell testified further that he and Cooper "pinched" cocaine for themselves from the packages before they were sold.[11]

We conclude that the admissibility of evidence of Cooper's prior cocaine use satisfies the *Shackleford* test.

Pernell did more than relate that Cooper used cocaine on prior occasions. Specifically, his testimony tied Cooper's use of cocaine to Cooper's sales of cocaine: in return for working at the drug house, Cooper skimmed cocaine for his personal use off large amounts of the drug before these amounts were sold. This testimony showed Cooper's *motive* rather than his *propensity* to participate in a conspiracy to sell cocaine, thus satisfying prong one of the test.[12]

Prong two is also satisfied. Although use is not necessarily similar to selling, the fact that Cooper used cocaine skimmed off packages before they were sold connects his use with sales in this case. His use was also close enough in time to the sales. Cooper and Pernell skimmed cocaine for their personal use between the time that they obtained the cocaine and the time they sold it.[13]

As to prong three, there was also sufficient evidence for the jury to find that Cooper used cocaine on previous occasions.

---

**10.** Prior to the *Huddleston* decision, the evidence had to be clear and convincing. *Shackleford,* 738 F.2d at 779. In *Huddleston,* the Supreme Court held that only "sufficient evidence to support a finding by the jury that the defendant committed a similar act" is required, *Huddleston,* 108 S.Ct. at 1295, and thus "invalidated the third prong of the *Shackleford* test." *United States v. Rollins,* 862 F.2d 1282, 1294 (7th Cir. 1988).

**11.** At trial, the following exchange occurred:
[THE GOVERNMENT]: Did you get any drugs in return for working there, too?
[PERNELL]: We would pinch-out of big packages we would pinch.
[THE GOVERNMENT]: What does that mean, took some for yourself?
[PERNELL]: Yes, sir.
[THE GOVERNMENT]: You said we. Who else did this?
[PERNELL]: Me and Kenneth Cooper.
[THE GOVERNMENT]: Defendant Cooper?
[PERNELL]: Yes.
Tr. 141.

**12.** We do not hold that prior use of drugs is always admissible to show motive or any other admissible purpose under Rule 404(b). Rather, our conclusion that evidence of Cooper's prior use was properly admitted under Rule 404(b) is a limited one—what makes Cooper's use probative of motive to distribute is that the cocaine he used was cocaine he skimmed off large amounts before these amounts were sold. We therefore do not adopt what appears to be the broadreaching position of the First Circuit in *United States v. Mateos–Sanchez,* 864 F.2d 232, 235 (1st Cir.1988) ("The question regarding the use of drugs was probative. Because the defendant was charged with possession and intent to distribute narcotics, a knowledge of whether he used drugs could aid the jury in assessing guilt. The defendant's personal use of drugs could be particularly probative of motive, knowledge or absence of mistake or fraud.").

**13.** Pernell also testified that between the second and third attempted sales of the one-half kilo of cocaine on November 7, he and Cooper skimmed about four ounces off the package for their own use. Cooper does not challenge the admission of this evidence.

In addition to Pernell's testimony, Agent Melick testified that he recovered a syringe and a spoon, tools used to inject cocaine, from Cooper at his arrest.

 ▉ Finally, turning to the fourth prong, we find that the probative value of the evidence of Cooper's prior cocaine use was not outweighed by the danger of unfair prejudice. There was other evidence linking Cooper to cocaine sales. Pernell testified that he and Cooper rented the 39th Street apartment to conduct drug operations and that they moved these operations to Hutt's apartment after the November 2d raid. Pernell also testified that he and Cooper used a beeper to carry on the business, prepared drugs for sale; arranged the sale of the one-half kilo of cocaine involved in the November 7th arrests; obtained the cocaine, which they hid in the basement of Hutt's apartment prior to that date; and had planned to split the profits from that sale. On November 7th, Cooper returned calls made by the confidential informant to the beeper and handled both the cocaine and the gun Pernell was carrying. Pernell's testimony as to Cooper's prior use was therefore more probative than it was prejudicial.[14] We conclude that the trial judge did not abuse his discretion in determining that this evidence was properly admitted under the *Shackleford* test.

Cooper also challenges the admissibility of statements made by Donald Miller that Miller had previously purchased cocaine from Cooper.[15] We agree with the government that the admitted references do not constitute evidence of other bad acts but rather are evidence of the crimes for which Cooper was indicted. Although the trial judge was not explicit, it appears that he allowed evidence of the prior sale on this ground. Count I of the indictment charges Cooper with conspiracy to possess with intent to distribute cocaine and to distribute cocaine "[b]eginning on or before November 2, 1988, and continuing to on or about

November 7, 1988, the exact dates being unknown to the Grand Jury...." Miller did not provide the exact date of the sale involving Cooper, but other statements of his show that the sale in question occurred during the pendency of the conspiracy. Miller testified that he first bought cocaine from Pernell about two weeks before November 14, 1988, and that he bought cocaine from Pernell and someone called "Pool" or "Pooh" within seven days of that first sale. Miller stated that the first sale occurred at 93d Street and Silver Spring Drive, the location of Hutt's apartment. This places that sale no earlier than November 2, when, following the raid, drug operations were moved from the 39th Street apartment to this address. The sale involving Cooper, occurring within seven days of this sale, is clearly within the pendency of the conspiracy. Because the evidence was properly admitted as part of the crimes charged, no Rule 404(b) analysis is required.

Cooper also argues that Officer Debraska's testimony regarding Cooper's presence at the November 2d raid at the 39th Street apartment was improperly admitted as evidence of prior bad acts in violation of Rule 404(b). For the reasons discussed in the preceding paragraph, we agree with the government that this incident also occurred during the pendency of the conspiracy. Officer Debraska's testimony was therefore properly admitted as part of the crimes charged and no Rule 404(b) inquiry is necessary.

We therefore conclude that the trial judge did not abuse his discretion in admitting evidence of Cooper's prior use of cocaine, of Cooper's prior sale of cocaine, or of Cooper's presence at the 39th Street apartment.

### 2. Co-conspirator Hearsay Statements

Cooper contends the trial judge erred in admitting Pernell's testimony regarding

---

**14.** The jury was also instructed that they were to consider evidence of the use of cocaine only for the limited purpose of determining whether there was a motive to distribute.

**15.** Miller had previously bought cocaine from Pernell. On November 14, 1988, Miller left a

number on the beeper that had been recovered at the November 7th arrests. When Agent Melick called the number, Miller told him that he was interested in buying cocaine. In return for immunity, Miller testified for the government.

the conversation between the confidential informant and Hutt's girlfriend, Lisa, and Miller's testimony regarding the conversation between himself and Cooper. The trial judge admitted evidence of both conversations under Federal Rule of Evidence 801(d)(2)(E).

 Under Rule 801(d)(2)(E),[16] the co-conspirator exception to the hearsay rule, a statement made by a member of the conspiracy is admissible against other members of the conspiracy if made "during the course of and in furtherance of the conspiracy." The government has the burden of proving that (1) a conspiracy existed; (2) the defendant and the declarant were members of the conspiracy; and (3) the offered statement was made during the course of and in furtherance of the conspiracy. *United States v. Hooks,* 848 F.2d 785, 794 (7th Cir.1988); *United States v. Kaden,* 819 F.2d 813, 819 (7th Cir.1987). Prior to the Supreme Court's decision in *Bourjaily v. United States,* 483 U.S. 171, 107 S.Ct. at 2775, 97 L.Ed.2d 144, (1987), this circuit required evidence independent of the hearsay testimony to show that the conspiracy existed and that the defendant was a member. *United States v. Santiago,* 582 F.2d 1128, 1135 (7th Cir.1978). While the admissibility determination regarding co-conspirator hearsay remains governed by the preponderance of evidence standard, the Supreme Court in *Bourjaily* eliminated the "independent evidence" test. *Bourjaily,* 483 U.S. at 179, 107 S.Ct. at 2781. Recognizing the change in the foundation for the admission of hearsay under Rule 801(d)(2)(E), we no longer require that the existence of the conspiracy and of the defendant's participation in it be shown by a preponderance of evidence independent of the hearsay statements. *Hooks,* 848 F.2d at 795 (citing cases).

Our review of the trial judge's determinations under Rule 404(b) is governed by the "clearly erroneous" standard. *United States v. Shoffner,* 826 F.2d 619, 627 (7th Cir.), *cert. denied,* 484 U.S. 958, 108 S.Ct.

356, 98 L.Ed.2d 381 (1987); *see also United States v. Doerr,* 886 F.2d 944, 951–52 (7th Cir.1989).

 Cooper first contends as a general matter that the trial judge should not have admitted the evidence in question because the government cannot prove that he was a member of the conspiracy. We have already detailed Cooper's involvement in co-caine sales in our discussion of why evidence of his prior drug use was more probative than prejudicial under the *Shackleford* test. *See supra* Part II.B.1. It is obvious from the evidence adduced at trial that Cooper was a member of the conspiracy.

Cooper next argues that because Hutt's girlfriend Lisa was not a member of the conspiracy, Pernell's testimony that she had taken a message from the confidential informant concerning the sale of the one-half kilo of cocaine and had passed on this information to Pernell should not have been admitted.

We have already observed that mere association with co-conspirators or knowledge that something illegal is occurring is not sufficient to establish participation or membership in a conspiracy under the slight evidence standard. *United States v. Abayomi,* 820 F.2d 902, 906 (7th Cir.), *cert. denied,* 484 U.S. 866, 108 S.Ct. 189, 98 L.Ed.2d 142 (1987); *United States v. Dalzotto,* 603 F.2d 642, 645 (7th Cir.), *cert. denied,* 444 U.S. 994, 100 S.Ct. 530, 62 L.Ed.2d 425 (1979). In this case, however, Lisa did more than merely associate with the co-conspirators or know that they were engaged in illegal activities. She talked to the confidental informant on the telephone; found out that he was interested in setting up a sale; and then told Pernell that the informant needed a one-half kilo and asked if they could get it for him. Because Lisa "'in some knowing way participated in the [existing] conspiracy,'" *Abayomi,* 820 F.2d at 906 (quoting *United States v. Mancillas,* 580 F.2d 1301, 1307 (7th Cir.), *cert. denied,* 439 U.S. 958, 99 S.Ct. 361, 58 L.Ed.2d 351

---

**16.** Rule 801(d)(2)(E) provides: "A statement is not hearsay if ... [t]he statement is offered against a party and is ... a statement by a co-conspirator of a party during the course and in furtherance of the conspiracy."

(1978)), she became a participant in the conspiracy.

 Cooper also argues that Miller's testimony that Cooper expressed concern that Miller was in law enforcement should not have been admitted under Rule 801(d)(2)(E). Cooper contends that the government cannot show that Cooper's statements were made in furtherance of the conspiracy, a requirement of Rule 801(d)(2)(E), because (1) the government did not establish the exact date the conversation took place and (2) the conversation itself did not further the common objectives of the conspiracy.

Again, because the "in furtherance" requirement is part of the trial judge's *Santiago* findings, *see Doerr*, 886 F.2d at 951–52, our review remains governed by the "clearly erroneous" standard.

We recognize that "[n]arrative declarations, mere 'idle chatter,' and superfluous casual conversations" do not constitute statements made "in furtherance" of a conspiracy. *Doerr*, 886 F.2d at 951–52 (citations omitted). At the same time, we also recognize that as long as "some reasonable basis exists for concluding that the statement furthered the conspiracy," the "in furtherance" requirement is satisfied. *Garlington v. O'Leary*, 879 F.2d 277, 283 (7th Cir.1989) (quoting *United States v. Mackey*, 571 F.2d 376, 383 (7th Cir.1978)).

In disposing of Cooper's claim that evidence of this sale was improperly admitted under Rule 404(b), we found that the sale took place during the pendency of the conspiracy. Because the conversation in question took place immediately prior to that sale, we find that the conversation occurred during the pendency of the conspiracy as well. This is close enough.

With respect to Cooper's claim that the conversation itself did not further the objectives of the conspiracy, we note that conspiracies, by definition, are formed to commit criminal acts. *United States v. Douglas*, 874 F.2d 1145, 1151 (7th Cir. 1989); *United States v. Whaley*, 830 F.2d 1469, 1473 (7th Cir.1987), *cert. denied*, —— U.S. ——, 108 S.Ct. 1738, 100 L.Ed.2d 202 (1988). Avoiding detection by law enforcement officials clearly furthers the aims of a conspiracy. It is obvious from Miller's testimony that this is what Cooper was attempting to do when questioning Miller.

[THE GOVERNMENT]: Okay, during your conversation in the apartment, what did you talk about?

[MILLER]: As we were waiting for Tim to arrive, he [Cooper] had asked me ... if I was ever affiliated with law enforcement or any law enforcement agency.

[THE GOVERNMENT]: What did you say?

[MILLER]: I had said no, and he asked me a couple of other times, I even, he even had me start to write it down, that I, Don Miller am not affiliated with any law enforcement, and then he believed me.

[THE GOVERNMENT]: Did he explain why he was concerned that you might be associated with law enforcement?

[MILLER]: He had said that there was one of their houses were popped shortly before.

We therefore conclude that the trial judge's admission, under Rule 801(d)(2)(E), of both conversations was not clearly erroneous.[17]

Finally, Cooper argues that the trial judge failed to make a record as to whether the government had proved the essential elements of *Santiago*. This claim is also without merit.

The trial judge decided to allow the co-conspirator hearsay statements into evidence conditionally, noting that the government would be running the risk of a mistrial if it failed to meet the requirements of *Santiago*.[18] At the close of the government's case-in-chief, the trial judge stated:

---

**17.** Cooper challenges the admission of Miller's testimony only on the ground that Cooper's statements were not made in furtherance of the conspiracy. Because he raises no question as to whether Miller was a member of the conspiracy, we do not address that issue.

**18.** We approved of this procedure in *United States v. Andrus*, 775 F.2d 825 (7th Cir.1985). In *Andrus* we stated that where the evidence to establish the existence of the conspiracy is voluminous, the trial court can either "admit the statements subject to the government's eventual proof ... of the elements required under rule

I think its [sic] also incumbent on me now, at the close of the government's case, to make a conclusion on the question of *Santiago*, and the court would and does find that there is sufficient evidence to establish the existence of the conspiracy, so as to make the declarations, the out of court declarations of co-conspirators that would otherwise be inadmissible as hearsay, admissible under 801[(D)(2)(E)] and in accordance with that, why the court makes that finding.

Tr. at 338–39. We find that this determination by the trial court that the government had met the requirements of *Santiago* is sufficient.

### III. CONCLUSION

For the preceding reasons, the convictions of Shawn W. Troop and Kenneth A. Cooper are hereby AFFIRMED.

801(d)(2)(E) ... [or] ... require the government to make a preliminary showing of its proof on the declarations and the conspiracy

from which the court can determine whether the government will satisfy its burden under *Santiago.*" *Id.* at 837.