UNITED STATES of America

v.

James B. THOMAS.

Crim. No. 88–260 (CRR).

United States District Court,
District of Columbia.

July 7, 1992.

John M. Facciola, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., Washington, D.C., for the District of Columbia, was on the brief.

Steven R. Kiersh, Washington, D.C., for defendant.

## MEMORANDUM OPINION

CHARLES R. RICHEY, District Judge.

Before the Court is the defendant's Motion to Vacate Sentence and for New Trial pursuant to 28 U.S.C. § 2255. The defendant bases his claim for relief on ineffective assistance of counsel at trial. Specifically, he attacks his trial counsel's alleged failure to properly object to the introduction of tape recorded telephone conversations between an undercover police officer and unindicted juvenile co-conspirator, and trial counsel's failure to object to dual testimony of a police officer as both a factual witness and an opinion witness.

The Court has carefully considered the submissions of the parties, the arguments of counsel, the transcript of the trial, the applicable law, and the entire record herein, and concludes that the defendant's motion must be denied.

## I. Background

### A. *Procedural History*

The defendant was charged in an indictment filed on July 19, 1988 with one count of conspiracy to distribute phencyclidine ("PCP") and to possess cocaine with the intent to distribute it, and with one count of distribution of PCP. A jury trial began on September 8, 1988. The defendant was convicted the following day on the conspiracy count. The jury was unable to reach a decision on the distribution count, and it was dismissed. The Court sentenced the defendant to 121 months imprisonment, to be followed by thirty six months of supervised release, on November 14, 1988. A Notice of Appeal was timely filed, but on appeal, the defendant's conviction was affirmed. *United States v. Thomas*, 896 F.2d 589 (D.C.Cir.1990). The Court of Appeals affirmed this Court under the plain error standard, holding that because the alleged errors were not the subject of proper objections, this Court did not have the opportunity to consider the issues raised. *Id.*

### B. *Evidence Offered At Trial*

At trial, the government presented three witnesses. The government's first witness was Officer Christopher Benefiel, assigned to the Drug Enforcement Agency ("DEA") from the Fairfax County Police Department. He testified that on March 11, 1988, at about 1:00 p.m., he and DEA Agent Preston L. Grubbs were working undercover. Tr. 1–2. As part of an attempt to arrange a large PCP transaction, they went to the Pizza Hut restaurant at 7435 Georgia Avenue, to meet with Damion Chase (also known as "Zeke"), a juvenile co-conspirator, and an individual Officer Benefiel did not know. Zeke introduced the other individual (the defendant herein) as "Tony". Tr. 3. The defendant said that he

was Chase's PCP supplier. Tr. 6. Officer Benefiel stated that he would supply two kilos of cocaine in exchange for two gallons of PCP, plus $5,000. The defendant, who did all the negotiating with the officers at the restaurant, agreed to this arrangement. Tr. 7–9; 53–54.

During the course of this meeting, the participants discussed the location and the logistics of the proposed transaction. Tr. 11. They agreed that the location would be 6501 Georgia Avenue, N.W., in a Safeway parking lot. Tr. 9, 11.

On March 14, 1988, Chase (the juvenile) and Officer Benefiel had a series of telephone conversations, the purpose of which was to confirm defendant's identity and confirm that he was not a police officer or informant. Tr. 13. During the conversations, Benefiel and Chase planned a smaller drug transaction to precede the larger exchange described above. Tr. 14. The smaller transaction was to take place on March 15, 1988 at 5:00 p.m. at 6501 Georgia Avenue, N.W., with the presence of the defendant. At trial, the prosecution proposed playing audio tapes of these conversations to the jury. Tr. 14. Defense counsel objected on hearsay grounds, arguing that the tapes were hearsay as to the juvenile co-conspirator, Chase, and that Chase should be available for cross-examination at trial. *Id.* The Court overruled the objection, citing the co-conspirator exception to the hearsay rule. Tr. 14–15.

Officer Benefiel testified that on March 15, 1988 at 5:00 p.m., he appeared at 6501 Georgia Avenue, the selected site for the smaller transaction. The defendant was not present as had been agreed, so Officer Benefiel refused to make the transaction and departed, returning at 6:00 p.m. Tr. 30–31. The defendant and Chase then approached Benefiel and entered his car, with the defendant sitting in the front seat. Tr. 32–33, 82. Officer Benefiel gave the defendant $1200 and Chase gave Benefiel four bottles of what was later shown to be PCP. Benefiel and the defendant then began to review arrangements for the larger transaction involving the two gallons of PCP and two kilograms of cocaine. Tr. 34.

Next, DEA Agent Preston L. Grubbs testified at trial regarding his participation in the March 11, 1988 meeting with Chase and the defendant. He confirmed parts of Benefiel's factual testimony regarding the negotiation of the proposed exchange of PCP and cocaine. Tr. 49–52; 54–55.

Government counsel then asked Agent Grubbs about his experience in purchasing and supervising purchases of narcotics as a DEA agent. Defense counsel objected to this line of questioning, arguing that the prosecution was trying to qualify the witness as "some kind of drug expert". Tr. 55–56. The Court indicated that the government could qualify the witness to render an opinion if it wanted to. Defense counsel objected, stating that "an expert ain't just some Bozo who works for the Drug Enforcement Agency". Tr. 59–60. After further discussion, the Court allowed the government to qualify the witness to render opinions. Tr. 60. After some questioning, defense counsel again objected to the witness' qualifications. The Court overruled the objection, noting that Fed. R.Evid. 702 allows a witness to testify where, *inter alia,* experience qualifies him or her to state an opinion. Tr. 67. The Court directed government counsel to lay further foundation on the witness' qualifications, and precluded counsel from referring to the witness as an "expert". Tr. 67–68. Before allowing the witness to answer the prosecutor's questions concerning the amount of PCP that was involved, its value, and the reason drug dealers employ juveniles, the Court gave the jury the following limiting instruction:

> Ladies and gentlemen of the jury, the Rules of Evidence or the law ordinarily do not permit witnesses to testify as to opinions or conclusions; however, there is an exception to this rule, and that exists as to those witnesses who, by education, experience, or training, have become qualified to give an opinion in some art, science, profession, or calling. These witnesses who are so qualified may state an opinion as to relevant and material matters in which they are qualified by virtue of their education, train-

ing, or experience, and they may also state their reasons for their opinions.

You are not bound by the opinion of a witness. If you should decide that the opinion of a witness is not based upon sufficient education and experience, or if you should conclude that ... the reasons given in support of this opinion are not sound, or that the opinion is outweighed by other evidence, you may disregard the opinion in whole or in part. In other words, ladies and gentlemen, you should give the opinion testimony such weight as in your judgment it is fairly entitled to receive in connection with all the other evidence in this case. ·

Tr. 71. Defense counsel, on cross-examination, pointed out ways in which the witness lacked specialized education or training. Tr. 75–76.

Finally, Livia Adams, a DEA agent, testified to her observation of the March 11, 1988 Pizza Hut conversation from a table about ten feet away. Tr. 77. She also observed the March 15, 1988 meeting in the Safeway parking lot, and saw the three individuals (Benefiel, Chase, and the defendant) get into a car. Tr. 78–80, 82. She later arrested the defendant in June of 1988 in Capital Heights, Maryland. Tr. 84–85.

The defense did not introduce any witnesses.

### C. *The Appeal*

On appeal, defendant argued that the Court erred in admitting the taped conversations between Officer Benefiel and Chase, the juvenile co-conspirator. Defendant contended that Chase's statements were not in furtherance of a conspiracy to sell drugs, and therefore did not fall within the conspiracy exception to the hearsay rule. Defendant also claimed that it was error for the Court to permit Officer Grubbs to testify as to both facts and opinions. The Court of Appeals held that neither of these objections had been raised at trial, and that neither warranted reversal under the plain error standard. The Court did not take a position on the either issue, but acknowledged that had the objection to the dual use of the witness for factual and opinion testimony been properly raised at trial, it could have raised serious issues on appeal:

We take no position here on whether this twofold use of a single witness is legally permissible. We note, however, that settled law from the District of Columbia Court of Appeals does appear to prohibit such use. *See Beach v. United States*, 466 A.2d 862 (D.C. App.1983). Had this objection been properly raised and preserved, it would pose a serious issue for the court, since it is important to maintain as much commonality between this court and the D.C. courts as is possible.

896 F.2d at 591.

### II. Analysis

### A. *The Applicable Law*

■ Under *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), there is a two-part test for determining whether there is a claim for ineffective assistance of counsel: (1) counsel's performance must be deficient, to the extent that he or she made errors so serious that counsel was not functioning as the "counsel" guaranteed · under the 6th Amendment; (2) the deficient performance must have prejudiced the defense, such that it deprived the defendant of a fair trial, whose result is reliable. *Id.* at 687, 104 S.Ct. at 2064. The "ultimate focus" of the entire inquiry is the "fundamental fairness" of the trial, and whether there has been a breakdown of the adversarial process that renders the result unreliable. *Id.* at 696, 104 S.Ct. at 2069. If the defendant makes an insufficient showing on one part of the test, the court should deny the ineffective assistance claim without reaching the other part of the test. *Id.* at 697, 104 S.Ct. at 2069.

■ To determine if counsel's performance was constitutionally deficient, the inquiry is whether counsel's assistance was reasonable considering all the circumstances. Conduct should be evaluated from counsel's perspective at the time and on the facts of the particular case. *Id.* at 689, 104 S.Ct. at 2065. A court must in-

dulge a "strong presumption" that the conduct falls "within the wide range of reasonable professional assistance." *Id.* at 689, 104 S.Ct. at 2065. Strategic decisions "made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Id.* at 690–91, 104 S.Ct. at 2065–66. However, strategic choices after incomplete investigation are only reasonable to the extent reasonable professional judgment supports the limits on the investigation. *Id.*

■ To determine whether counsel's actions prejudiced the defense, the inquiry is whether there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome. *Id.* at 694, 104 S.Ct. at 2068.

B. The Errors Alleged by the Defendant Do Not Constitute Ineffective Assistance of Counsel

The defendant bases his ineffective assistance claim on his trial counsel's failure to object at trial regarding the issues raised on appeal; that is, the failure to object to the dual use of Officer Grubbs as a fact and opinion witness and failure to raise the question of whether the juvenile's taped statements fell within the conspiracy exception to the hearsay rule. Neither of these alleged errors rises to the level of ineffective assistance.

1) The Juvenile Co–Conspirator's Statements Were Admissible; Therefore the Failure to Object on the Ground that the Statements Did Not Further a Conspiracy Was Neither Unreasonable Nor Prejudicial

■ Under Fed.R.Evid. 801(d)(2)(E), a statement made by an alleged co-conspirator are admissible against a defendant if there is evidence that a conspiracy existed, the declarant and the defendant were members of the conspiracy, and the statements were made during the course and in furtherance of the conspiracy. *United States v. Gantt,* 617 F.2d 831, 844 (D.C.Cir.1980); *United States v. Perholtz,* 842 F.2d 343, 356 (D.C.Cir.), *cert. denied,* 488 U.S. 821, 109 S.Ct. 65, 102 L.Ed.2d 42 (1988). The defendant does not dispute that a conspiracy existed and that the declarant and defendant were members thereof. Rather, he contends that the statements were not admissible because they were not made in furtherance of the conspiracy. Therefore, defendant alleges, trial counsel's performance was inadequate because he failed to object to the admission of the tapes on that basis.

■ Defendant contends that the taped conversations of March 14 and 15, 1988 did not further the conspiracy because the essential terms of the transaction had been established during the March 11, 1988 meeting, and the transaction could have gone forward on that date but for organizational problems which caused Officer Benefiel to delay it. Def. Mot. at 10–11. Therefore, defendant argues, the telephone conversations after March 11, 1988 could not have furthered the conspiracy. The defendant contends that instead the conversations represent "[m]ere narratives of past events" which are not admissible, and that trial counsel should have so argued. *See United States v. Haldeman,* 559 F.2d 31, 110 (D.C.Cir.1976), *cert. denied,* 431 U.S. 933, 97 S.Ct. 2641, 53 L.Ed.2d 250 (1977).

The Court is not persuaded by these arguments, and finds that the conversations between Chase and Benefiel which were recorded on the tapes furthered the conspiracy. According to the Indictment, the conspiracy at issue here was to distribute PCP and to possess cocaine with the intent to distribute it. In interpreting Fed. R.Evid. 801(d)(2)(E), the Court of Appeals has found that a conspiracy continues until the objective of the conspiracy is fully achieved. *See Perholtz,* 842 F.2d at 357. The exchange of PCP and cocaine discussed on March 11, 1988 was not achieved on March 11, 1988, because Officer Benefiel could not secure the drugs necessary for the transaction without DEA approval. Tr. 10. Therefore, the objective of the conspiracy, the exchange of the PCP and cocaine, had not been achieved when the

telephone conversations were taped. Neither had a final date been agreed upon. Moreover, the telephone conversations furthered the conspiracy by arranging a "test" transaction to test whether the defendant intended, in good faith, to complete the larger transaction that was the subject of the conspiracy. Tr. 26–27, 33; Tr. of March 14, 1988 Telephone Call No. 1 at 2–3. Arrangement of this smaller transaction therefore helped to assure the completion of the larger transaction. *See United States v. James,* 510 F.2d 546, 549–50 (5th Cir.), *cert. denied,* 423 U.S. 855, 96 S.Ct. 105, 46 L.Ed.2d 81 (1975) (statements made to supposed co-conspirator allaying suspicions of other conspirator were admissible because they furthered the completion of the conspiracy); *cf. United States v. Troop,* 890 F.2d 1393, 1404 (7th Cir.1989) (co-conspirator's expression of concern that participant was a law enforcement officer admissible because avoiding police detection furthers conspiracy). Moreover, the possible future date of the larger transaction was discussed during the taped conversations, thereby facilitating its eventual occurrence. Tr. of March 14, 1988 Telephone Call No. 1 at 4. For all of these reasons, the statements were admissible under Fed. R.Evid. 801(d)(2)(E).

Even if, *arguendo,* trial counsel should have raised the issue of whether the taped statements were made in furtherance of the conspiracy by stating an objection, this omission was not prejudicial. If trial counsel had raised a timely objection on that basis, the Court would have overruled it for the reasons previously stated.

2) Counsel's Failure to Raise Non–Controlling Precedent Regarding the Dual Testimony of a Witness Regarding Facts and Testimony Was Neither Unreasonable Nor Prejudicial

In *Beach v. United States,* 466 A.2d 862, 865 (D.C.1983), the District of Columbia Court of Appeals found that it was error for a detective to testify both as a fact witness and as an opinion witness. Defendant contends that, based on this persuasive authority, trial counsel's failure to object to Officer Grubbs' dual testimony constituted ineffective assistance. The Court is not convinced that this omission was unreasonable. While ignorance of controlling law has been held to constitute ineffective assistance, *see, e.g., United States v. Loughery,* 908 F.2d 1014, 1018 (D.C.Cir.1990); there is no controlling law in this circuit for the proposition that a witness may not testify both as to facts and opinions. While the District of Columbia Court of Appeals has expressed disfavor with the practice, the Second Circuit has explicitly allowed it. *See, e.g., United States v. Young,* 745 F.2d 733, 760 (2nd Cir.1984), *cert. denied,* 470 U.S. 1084, 105 S.Ct. 1842, 85 L.Ed.2d 142 (1985) (government may elicit opinion testimony from law enforcement officers who also testified as to facts). Given the split in authority, this Court cannot say that trial counsel's performance was defective for failing to raise the issue.

Even if trial counsel should have been aware of the D.C. Court of Appeals' holding in *Beach* and objected on that basis, his failure to do so was not prejudicial to the defendant's case. This Court would not have been inclined to sustain such an objection under the facts of this case. This Court was very careful to assure that safeguards were in place to prevent the jury from giving Agent Grubbs' testimony undue deference. The Court made sure that no one referred to Agent Grubbs as an "expert". This Court believes that using the term "expert" may encourage a jury to give the witness' testimony more weight than it is fairly entitled to receive. Although Rules 702 and 703 of the Federal Rules of Evidence do not preclude the use of the term "expert", the rules make clear that the purpose of the testimony is to allow a witness with specialized knowledge to state an opinion. The Court believes that referring to the witness as an "opinion witness" explains the purpose of the testimony to the jury in a manner more consonant with the interests of justice as prescribed in Fed.R.Crim.P. 2, and accordingly the Court referred to Agent Grubbs simply as an "opinion witness".

Moreover, before Agent Grubbs rendered his opinions, the Court gave the jury

the limiting instruction, *supra*, p. 5, as to how it should consider the testimony of opinion witnesses. Tr. 71. This instruction was repeated in the final jury instructions. In light of the limiting instruction and careful avoidance of the term "expert" designed to dispel any possible prejudice Officer Grubbs' testimony might have engendered, this Court would have permitted the testimony. These procedural safeguards would have distinguished the case, at least in part, from *Beach*, and the Court therefore would have been inclined to follow the Second Circuit's approach and allow the testimony.

Finally, the Court notes that ineffective assistance claims are to be evaluated under the totality of the circumstances. *Strickland v. Washington*, 466 U.S. at 689, 104 S.Ct. at 2065. The defendant contends that the fact that the jury failed to reach a decision on the second count of the indictment suggests that but for trial counsel's alleged errors, there might have been a similar outcome with regard to the first count of the indictment. The Court does not believe that the reality of the trial supports this view. The performance of defendant's trial counsel in this case, overall, was excellent. This Court remembers trial counsel's performance vividly, despite the passage of time, because it was outstanding. This defendant had a fair trial and enjoyed the benefit of adversarial testing. *See Strickland* at 687, 696, 104 S.Ct. at 2052, 2069. The Court believes that but for trial counsel's outstanding performance, the defendant would likely have been convicted on both counts rather than only on one count. Under these circumstances, the defendant's claim of ineffective assistance of counsel must fail. Taken as a whole, defense counsel's performance at trial was well within the bounds of competent representation. Even if trial counsel had made the objections that the defendant now, in hindsight, insists were essential, there is no reasonable probability that the results would have been any different.

III. Conclusion

Accordingly, for all of the reasons previously stated, this Court shall deny the defendant's Motion to Vacate Sentence and for a New Trial, and dismiss this case.