UNITED STATES of America,
Plaintiff–Appellee,

v.

Fred FELTON, Defendant–Appellant.

No. 89–2783.

United States Court of Appeals,
Seventh Circuit.

Argued May 29, 1990.

Decided July 23, 1990.

Rehearing Denied Aug. 21, 1990.

Ava M. Gould, Barry R. Elden, Asst. U.S. Atty., Office of U.S. Atty., Criminal Receiving, Appellate Div., Chicago, Ill., for plaintiff-appellee.

Gary J. Ravitz, Chicago, Ill., for defendant-appellant.

Before BAUER, Chief Judge, FLAUM, Circuit Judge, and ESCHBACH, Senior Circuit Judge.

BAUER, Chief Judge.

Fred Felton's defense at trial was that he didn't do it, but if he did do it, the devil (disguised as an undercover DEA agent) made him do it. The jury, however, chose a third option and convicted him of one count of conspiracy to possess with intent to distribute heroin and cocaine in violation of 21 U.S.C. § 846, and one count of attempting to possess heroin with intent to distribute in violation of 18 U.S.C. § 2; 21 U.S.C. §§ 841(a)(1) and 846. Felton appeals his conviction, claiming that the district court erroneously admitted certain hearsay testimony which deprived him of a fair trial. Because the admission of the hearsay statement was not plain error, we affirm.

## I.

In early October 1988, the Drug Enforcement Agency ("the DEA") leased an apartment in Presidential Towers, a residential complex located just west of downtown Chicago, and furnished it with electronic surveillance equipment. Agent Sherod Jones posed as a drug dealer and occupant of the premises. Agents William Maloney and John Riley monitored the surveillance equipment. Alvin Cargill, Felton's longtime friend and current roommate, was Maloney's confidential informant.

On October 12, 1988, informant Cargill and defendant Felton arrived at Jones' apartment.[1] While Cargill was on the telephone, Jones asked Felton whether he brought "the thing" with him. Felton replied no, and then asked Cargill to "run it

down" to Jones—to tell him what was going on. Cargill said that "the Karachi heroin would cost six." Felton asked if Jones had "dealt Karachi" before and later added that "Karachi really sells." When Jones expressed concern about their late arrival without the heroin, Felton replied that they were delayed because he was not able to "get with his people." When Jones asked how long it would take to get the heroin, Cargill said 45 minutes. Felton corrected him, saying that they would need an hour but that it would be a "straight move." Jones went to the bedroom, returned with $6000, and handed it to Felton, who then left with Cargill.

Cargill and Felton drove to Felton's house. Twenty minutes later, they left and drove to the Blue Room Lounge at 79th Street and King Drive. From there, they went across the street and into a small business. Two other men exited with them: Kenji Stewart (one of the other defendants indicted with Felton) and an unidentified man. After a brief conversation, Cargill and Felton returned to their car and followed Stewart and his companion to 61st Street and King Drive. Cargill and Felton got out of their car, spoke briefly with Stewart and the unidentified man and left. They returned to Presidential Towers. Felton stayed in the car and Cargill went to return the money to Jones. Jones testified that Cargill told him the deal did not go down because "surveillance was made."

The next day, Cargill and Stewart went to see Jones, sold him cocaine and arranged for the next deal. A few days later, another co-defendant, Byron Drew, delivered cocaine to Jones.

The next transaction occurred on November 1, 1988. Jones drove to Felton's house where he was to meet Eddie Bankroll, the targeted ringleader of the drug distribution conspiracy. Bankroll and Cargill emerged from Felton's house, walked over to Jones' car, delivered 26.39 grams of cut heroin and returned to the house. Although

---

1. Felton testified that on October 12, 1988, Cargill asked Felton to go for a ride in his car, adding that he was going to Presidential Towers in order to get money to buy drugs. Felton further testified that Cargill told him to go along with whatever he said and did.

Jones did not observe Felton during this transaction, two other agents placed him at the house immediately before and after the sale.

Jones later bought more cocaine from Stewart and another co-defendant, Carl Taylor.

Subsequently, a federal grand jury indicted Felton, Stewart, Drew and Taylor for the above narcotics activity. Felton was charged in two counts of the six count indictment, conspiracy to attempt to distribute cocaine and heroin, in violation of 21 U.S.C. § 846, and attempt to possess heroin with intent to distribute, in violation of 18 U.S.C. § 2; 21 U.S.C. §§ 841(a)(1) and 846. Felton was tried alone and the jury convicted him of both counts. The district court entered a judgment on the verdict and sentenced Felton to 41 months imprisonment, recommending that he be placed in a drug treatment program for his heroin addiction, and a five year term of supervised release, including participation in a drug abuse program. Felton filed a timely notice of appeal.

## II.

■■■ On appeal, Felton contends that a portion of Agent Jones' testimony was inadmissible hearsay,[2] and that the admission of this evidence constitutes reversible error. Agent Jones testified that Cargill told him that the October 12 deal did not go through because "surveillance was made." Although this statement was hearsay,[3] de-

fense counsel failed to object to its admission into evidence. The failure to object at trial constitutes waiver at the appellate level. *United States v. Gironda,* 758 F.2d 1201, 1216 (7th Cir.1985). Under these circumstances, our review of the alleged error is limited to the plain error rule of Fed.R. Crim.P. 52(b). "For an error to be plain it must 'be an error that probably changed the outcome of the trial.'" *United States v. Troop,* 890 F.2d 1393, 1396 (7th Cir.1989) (quoting *United States v. Silverstein,* 732 F.2d 1338, 1349 (7th Cir.1984)). Our review of the record demonstrates that the admission of Agent Jones' testimony with respect to the reason why the heroin sale was not consummated on October 12 clearly did not change the outcome of Felton's trial.[4]

Felton argues that there were three possible explanations for his behavior on October 12. First, as contended by the government, Felton intended to go through with the deal, and would have, except that the surveillance agents were spotted. Second, his conduct amounted to nothing more than mere preparation for which he could not be convicted. Third, given the relationship between Cargill and Felton, and Cargill and Stewart (who apparently were related), the meeting was "entirely innocent." Felton asserts that the admission of the now-contested hearsay eliminates every explanation except the one that makes him guilty and was therefore prejudicial. It was especially prejudicial, he continues, in light of his own testimony that Cargill asked him to

2. Felton actually contends that the statement was "double hearsay" because Stewart, not Cargill, observed the surveillance agents. We agree that the statement was indeed inadmissible hearsay and therefore the validity of Felton's "double hearsay" label matters not.

3. Because Cargill was a confidential informant, not a co-conspirator, his statement was not admissible as an admission of a party opponent pursuant to Fed.R.Evid. 801(d)(2)(E) (statement is not hearsay if made "by a coconspirator of a party during the course and in furtherance of the conspiracy").

4. Felton also contends that the evidence was insufficient to support his convictions for attempt and conspiracy. Again, he has waived this argument because his counsel failed to renew the motion for judgment of acquittal at the close of trial, in motions after the verdict, or

within seven days of the jury's verdict as provided for in Fed.R.Crim.P. 29(c). *United States v. Carter,* 720 F.2d 941 (7th Cir.1983). Furthermore, the evidence is sufficient to sustain a conviction whether reviewed under the plain error standard or the standard of *Jackson v. Virginia,* 443 U.S. 307, 308, 99 S.Ct. 2781, 2783, 61 L.Ed.2d 560 (1979) (challenge to the sufficiency of the evidence will not succeed and judgment of the district court will be affirmed as long as *any* rational trier-of-fact could have found the essential elements of the crime beyond a reasonable doubt"). With respect to Felton's conspiracy conviction, the evidence is sufficient even under the "substantial evidence" test recently adopted by this circuit. *See United States v. Durrive,* 902 F.2d 1221, 1228 (7th Cir. 1990).

go for a drive on October 12, told him that he was going to get money for drugs and further told him to go along with whatever he (Cargill) said.

Felton's argument ignores the import of the videotape which recorded the October 12 transaction between Jones, Cargill and Felton and was shown to the jury. Felton was on "Candid Camera" as he discussed the quality of Karachi heroin, set the timetable for their return to the apartment, and explained why they were late and without the drugs in the first place. Felton's innocence is belied by his take-charge posture at the meeting between himself, Cargill, and Jones. In addition to this videotape evidence, Agent Maloney testified before the jury that he followed Cargill and Felton from the Presidential Towers apartment to Felton's house to the Blue Room Lounge to 61st Street and back to the apartment where Cargill returned the cash. From this sequence of events, beginning with the videotaped conversation at the apartment, the jury certainly could infer that Felton was unsuccessful in his attempt to secure heroin. The likelihood that Felton left the apartment to meet his suppliers is buttressed by the fact that one of the men he met at the Blue Room Lounge, Stewart, sold cocaine to Jones the next day. Although the additional information revealed by Jones' recounting of Cargill's statement might have confirmed for the jury the reason that the deal did not go through, it was not a piece of evidence that changed the outcome of the trial. Therefore, its admission was not plain error.

### III.

Despite Felton's protestations to the contrary, we find that the admission of Jones' hearsay testimony did not unfairly taint his trial. A defendant is entitled to a fair trial, *Rose v. Clark*, 478 U.S. 570, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986), not a perfect trial, and this Felton received. Felton's conviction is

AFFIRMED.