UNITED STATES of America, Plaintiff,

v.

Humberto LECHUGA, Defendant.

No. 88–CR–59.

United States District Court,
E.D. Wisconsin.

Aug. 2, 1991.

---

11. The court does not reach the plaintiff's claim concerning the impartiality of the three committee members.

John E. Fryatt, U.S. Atty. by R. Jeffrey Wagner, Deputy Asst. U.S. Atty., Milwaukee, Wis., for plaintiff.

Shellow, Shellow & Glynn by James Shellow, Dean Strang and Robert Henak, Milwaukee, Wis., for defendant.

## DECISION AND ORDER

MYRON L. GORDON, Senior District Judge.

On May 17, 1988, the defendant in the above-captioned action (along with another individual) was charged in a two-count indictment (1) with having knowingly and willfully conspired to distribute and possess with the intent to distribute cocaine and (2) with having knowingly and intentionally possessed with intent to distribute cocaine. A jury trial was commenced on May 28, 1991; the jury returned a verdict finding the defendant guilty as charged in the indictment. The defendant has now filed a "motion for judgment of acquittal or new trial." The motion will be denied.

I.

At trial, the evidence showed that, in early May 1988, Milwaukee county sheriff department detective Kevin Carr was conducting an undercover operation. Detective Carr approached Evelio Pinto (who was later indicted along with the defendant) and entered into an agreement to purchase 500 grams of cocaine. Mr. Pinto then contacted Samuel Pagan Rivera (who has come to be referred to as "Mr. Pagan"), his cocaine supplier, to get the cocaine. Mr. Pagan, in turn, contacted the defendant, Humberto Lechuga, who had at least once before supplied cocaine to Mr. Pagan for Mr. Pinto. (The testimony disclosed that the defendant had "shorted" Mr. Pinto three ounces on a prior transaction.)

The defendant obtained the cocaine and made arrangements with Mr. Pagan for its delivery. The delivery was to be made at an apartment near 35th Street and Howard Avenue on May 11, 1988. After some apparent logistical problems, the defendant (who was carrying duct tape and a package) and an unidentified man arrived at the apartment in a 1980 Pontiac Grand Prix, then owned by David Lopez. Detective Carr waited in the parking lot, along with Mr. Pinto and Mr. Pagan. When the defendant and other man entered the apartment building, Mr. Pagan followed to the designated apartment unit. At the door of that unit, Mr. Pagan was handed a package containing cocaine, and was directed by the defendant to return with the money.

The package, a bag containing a 500 gram "brick" of cocaine (sealed with duct tape) and three one ounce "baggies" of cocaine, was taken to the awaiting Messrs. Carr and Pinto. Mr. Pinto took the three baggies of cocaine and left the 500 gram brick for detective Carr. After struggling with an equipment failure, the detective soon gave awaiting law enforcement officers the signal to make the arrest of Messrs. Pinto and Pagan. A search warrant was obtained for the apartment a few hours later.

The search uncovered various items associated with the sale and distribution of

cocaine: freezer bags, a triple-beam scale, a device for compacting cocaine into brick form (also known as a "cocaine press"), and a roll of duct tape. The duct tape contained a latent fingerprint of the defendant. Further testimony disclosed that the defendant later called Mr. Lopez to tell him that his car may have been stolen (while, in fact, the car had been impounded and was subject to forfeiture for having been used in furtherance of a drug deal).

The defendant was arrested the following day, and when released on bail, he fled the jurisdiction. He was apprehended nearly three years later in Chicago, Illinois, and brought to trial. At trial, the defendant endeavored to convince the jury that it was not he who was involved in the above-described drug deal, but his brother, Raul Lechuga. The evidence disclosed that the two brothers looked very much alike, and that the defendant used the name "Raul," ostensibly to capitalize on the physical similarities. The jury was not swayed by the "misidentification defense" and, instead, accepted the government's evidence of the defendant's involvement in the drug trade as having established his guilt as charged beyond a reasonable doubt.

## II.

Count I of the indictment (the conspiracy count) charged the defendant with having knowingly and willfully conspired to distribute and possess with the intent to distribute cocaine, in violation of 21 U.S.C. § 846 and 18 U.S.C. § 2. Count II (the possession count) charged the defendant with having knowingly and intentionally possessed with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. Specifically, the defendant seeks the following: a judgment of acquittal on the conspiracy count, pursuant to Rule 29(c), Federal Rules of Criminal Procedure, or, in the alternative, for a new trial on that count; and a new trial on the possession count, pursuant to Rule 33, Federal Rules of Criminal Procedure. The defendant proffers the following bases for his motion: (1) that the evidence was insufficient to establish a conspiracy; (2) that the court's instructions to the jury con-

tained numerous "plain errors"; and (3) that government agents had threatened a "critical witness" before he testified, and that the government failed to disclose that fact to defense counsel, in violation of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

### A.

■ The defendant asserts that the evidence was insufficient to support the jury's verdict of guilty on the conspiracy count. Of course, when ruling on such a challenge, the court must view the evidence in the light most favorable to the government. *See United States v. Nesbitt*, 852 F.2d 1502, 1509 (7th Cir.), *cert. denied*, 488 U.S. 1015, 109 S.Ct. 808, 102 L.Ed.2d 798 (1988); *United States v. Pritchard*, 745 F.2d 1112, 1122 (7th Cir.1984). Where, as here, the defendant was convicted after a jury trial, "[a] verdict will withstand a sufficiency of the evidence challenge unless there is no evidence from which the jury could find guilt beyond a reasonable doubt." *United States v. Caudill*, 915 F.2d 294, 297 (7th Cir.1990).

The defendant claims that the evidence showed him to be involved in nothing more than a buyer-seller relationship with Mr. Pagan, as distinguished from being involved in a cocaine conspiracy. Notably, the defendant concedes that there was evidence of his "sporadic dealings" in cocaine. Defendant's Reply Memorandum at 3.

As it must, the government concedes that an isolated purchase of drugs does not, without more, demonstrate the existence of a conspiracy, citing *United States v. Koenig*, 856 F.2d 843, 854 (7th Cir.1988). However, the government suggests that its evidence showed that there was, indeed, "more" than an isolated purchase of drugs in this case. Viewed in the light most favorable to the government, there is no question that the defendant's involvement in a cocaine sale was demonstrated. Whether the government demonstrated the defendant's involvement in a cocaine conspiracy—a concert of action for a common

and unlawful purpose—is admittedly a somewhat closer question.

The government proffered the testimony of witnesses who identified the defendant as having been a participant in a sale involving over 500 grams of cocaine. The government demonstrated that Mr. Pagan had, for some reason, looked to the defendant for the 500 grams of cocaine involved in the sale. Witness testimony linked the defendant to an apartment that obviously served as the way station (as well as "weigh" station) for this and other cocaine sales. In short, the government proffered evidence that the defendant was regarded as a source of cocaine.

The question, then, becomes whether the government's evidence was sufficient to prove that the defendant had intentionally involved himself in a cocaine enterprise with Mr. Pinto, as charged in the indictment. In my opinion, the evidence proffered by the government entitled it to the submission of that question to the jury. The evidence suggested that the chain of cocaine delivery was well-established and demonstrated a common plan in action. There was evidence of at least one other transaction, that being the one in which the defendant shorted Mr. Pinto three ounces (later made up). That the two had past business dealings permits the inference that the two had entered an arrangement to distribute cocaine, founded upon a meeting of the minds—a conspiracy. Furthermore, the evidence suggested that the nature of the conspiracy—the agreement between the alleged coconspirators—was such that the delivery and sale of cocaine would have continued, but for the arrest of the defendant, Mr. Pinto, and Mr. Pagan. That other persons than he and Mr. Pinto (Mr. Pagan, for example) may also have been involved does not dilute the culpability of the defendant for having entered into a conspiracy to distribute cocaine.

The *weight* of the evidence regarding the defendant's involvement in a cocaine conspiracy was a question reserved for the jury. The jury *could* have resolved the matter in the defendant's favor, had they disbelieved the government's witnesses or

had they accepted the explanations of the defendant's counsel; they did not. That being so, the court finds no basis in the record to upset the jury's determination of guilty on the conspiracy count.

### B.

The defendant's contention that the court's jury instructions were fraught with error must be evaluated in light of the following colloquy, which was conducted on the record and in open court near the end of the trial:

THE COURT: Now that leaves us with the proposed instructions. And there may be room for something more significant in that discussion. The Government has given me its proposed instructions. You have a copy, I take it, Mr. Borda [defense counsel]

MR. BORDA: That's correct, Judge.

THE COURT: And you have submitted none affirmatively yourself, have you?

MR. BORDA: That's true, Judge.

THE COURT: All right. Have you—I have gone over them and they are basically sound, I think, but *you can, if you like, tell me which if any you have objections to.*

MR. BORDA: Judge, they are sound. I have seen similar instructions in other cases and the Court's already heard the various witnesses and knows what the evidence is all about in this case. It's a factual matter. *I really don't have a dispute with regard to the instructions.* This is not so complex that special instructions are required.

Transcript of Trial at 272–73 (emphasis added).

■ The defendant's failure to object to the jury instructions proposed by the government and delivered by the court obligates him to satisfy the burdensome requirements of the "plain error" doctrine before the merits of each of his various charges can be evaluated. *See* Rule 52(b), Federal Rules of Criminal Procedure; *see also* Rule 30, Federal Rules of Criminal Procedure (requiring a party to object to "errors" in the instructions before the jury

retires to deliberate). The "plain error" doctrine (almost exclusively the domain of the appellate court) allows a reviewing court to overlook the defendant's failure properly to object at trial to the asserted error if convinced that but for the asserted error the defendant would have been acquitted. *United States v. Felton,* 908 F.2d 186, 188 (7th Cir.1990); *United States v. Silverstein,* 732 F.2d 1338, 1349 (7th Cir. 1984), *cert. denied,* 469 U.S. 1111, 105 S.Ct. 792, 83 L.Ed.2d 785 (1985). *See also United States v. Balistrieri,* 577 F.Supp. 1532, 1546 (E.D.Wis.1984) (Evans, J.) (district court applies plain error standard when ruling upon post-trial motions).

The defendant has retained new counsel, who urge that the jury instructions Mr. Borda determined to be "sound" were not. Having considered the numerous challenges leveled against the instructions, the court is unconvinced of the existence of any errors—let alone "plain errors"—that suffice to overcome the defendant's failure to object at trial.

The so-called "joint venture" instruction challenged by the defendant followed Seventh Circuit Pattern Jury Instruction § 5.05. *Cf. United States v. Cross,* 816 F.2d 297, 303 (7th Cir.1987). The so-called "degree of participation" instruction challenged by the defendant was consonant with the law, insofar as it did no more than call to the jury's attention a well-established legal principle on the nature of individual liability for conspiratorial criminality. The "constructive possession" instruction was called for in light of the evidence at trial, based upon the pattern jury instructions.

■ The suggestion that the submission of the indictment, which spoke in terms of unlawful, knowing, and willful conduct, to the jury somehow unburdened the government of its obligation to prove intent on the conspiracy count is not well-taken. The defendant's most compelling argument is that the instructions were not adequately specific on the nature of intent necessary to establish criminal liability for conspiracy, although whether that constitutes error is doubtful, *see United States v.*

*Brown,* 739 F.2d 1136, 1143 (7th Cir.1984). It cannot be challenged that the jury instructions relating to each count made clear that a finding of intent to commit the crime denominated in each count was a prerequisite for a guilty verdict on each count. The instructions also repeatedly made clear the government's burden to prove intentional conduct on the part of the defendant beyond a reasonable doubt.

Having re-examined the instructions in their entirety, and having assessed each of the defendant's challenges to those instructions, I remain satisfied that the jury was properly instructed and carefully and thoughtfully attended to the difficult task of deliberating to reach a verdict. I am also satisfied that the defendant was fairly and properly tried on the offenses charged in the indictment. Furthermore, I am satisfied that the jury, at all times, remained mindful of the government's obligation to prove each element of each count beyond a reasonable doubt, as they had been instructed repeatedly.

■ Even if it may be said that the instructions contained errors, the court is convinced neither that "but for" any of the asserted errors in the instructions the defendant would have been acquitted, nor that the outcome of the trial is mistaken. In sum, the court has absolutely no reason to upset the considered judgment of the jury that the evidence demonstrated beyond a reasonable doubt that the defendant intentionally participated in a conspiracy to possess with intent to distribute, and did possess with intent to distribute, cocaine.

### C.

■ The defendant's last challenge—a suggestion that a government agent somehow threatened Mr. Pagan, who has been termed (by the defendant) the "government's star witness"—falls far short of substantiation. Thus, the defendant's call for a new trial, ostensibly after further exploration of this matter, is not well-taken. Notably, this theory was not developed in the defendant's initial memorandum in support of his motion. In fact, the defendant dedicated little more than a page of

his *reply* memorandum to introduce and explain his theory. The theory, as well as the affidavit of a private investigator employed by the defendant, is unconvincing.

At trial, the defendant's counsel repeatedly questioned Mr. Pagan on the nature of his interactions with the government. Under oath, Mr. Pagan, repeatedly denied the existence of any threats or promises by the government. The court finds no plausible hint of any wrongdoing (or concealment of exculpatory evidence) on the part of the government, and has no occasion to reopen any inquiry into these matters. That is, the court finds the tenets of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), to have been satisfied.

### III.

There was a dispute in the factual scenarios posed by the government and by the defendant and, hence, room for disagreement on the correctness of the jury's verdict. The events described at trial occurred many years earlier (and the indictment is, itself, many years old). Nevertheless, there is no basis for doubting the fundamental fairness of the trial.

Therefore, IT IS ORDERED that the defendant's motion for judgment of acquittal or new trial be and hereby is denied; the clerk of court is directed to enter this order and the judgment of conviction and imposition of sentence on the criminal docket as of today's date pursuant to Rule 4(b), Federal Rules of Appellate Procedure.